**In re Sidney BERNSON, Debtor.**

**Irving GENNET, Trustee, Plaintiff,**

**v.**

**Sidney BERNSON, Defendant.**

**Bankruptcy No. 81–00637–BKC–TCB.**
**Adv. No. 81–0366–BKC–TCB–A.**

United States Bankruptcy Court,
S. D. Florida.

Oct. 21, 1981.

Norman J. Kapner, West Palm Beach, Fla., for trustee.

Frank W. Weathers, West Palm Beach, Fla., for defendant.

Phillip T. Crenshaw, West Palm Beach, Fla., for original plaintiff.

## FINDINGS AND CONCLUSIONS

THOMAS C. BRITTON, Bankruptcy Judge.

The original plaintiff creditors settled all their differences with the defendant debtor and another defendant and Counts I, III and IV of this adversary complaint were dismissed. (C. P. No. 47). The trustee was substituted as plaintiff as to the remaining issues (Count II) which oppose the debtor's discharge under 11 U.S.C. § 727(a)(2), (3) and (5). The debtor has answered. (C. P. No. 39). The matter was tried on October 6. I conclude that the discharge must be denied under § 727(a)(2).

The allegations under § 727(a)(3), failure to preserve adequate financial records, and § 727(a)(5), failure to explain loss or deficiency of assets, do not require extended discussion. Neither allegation is sustained by this record.

■ Plaintiff has no personal financial records to speak of. However, it is uncontroverted that all his living expenses were paid by his ex-wife from her funds for better than ten years immediately before bankruptcy. His business affairs for the past three years, at least, have been entirely conducted through a corporation, Bernson Investments, Inc. Those records were complete and adequate and remain available, though they may have sustained some water damage caused by a roof leak. The records of the debtor's auto tire businesses, disposed of ten months before bankruptcy were also damaged by the water leak and were, understandably, discarded. The debtor's circumstances do not require that he maintain any other records. *Matter of Oesterle*, 5 Cir. 1981, 651 F.2d 401. He has adequately explained the present lack of records for his previous businesses. There is no proof of insufficiency of the records of his present business. 4 *Collier on Bankruptcy* (15th ed.) § 727.03.

■ Section 727(a)(2)(A) denies discharge to a debtor who has fraudulently transferred or concealed any of his property within one year before bankruptcy. An actual intent to obstruct creditors must be proved, although that intent may be inferred. 4 *Collier on Bankruptcy* (15th ed.) § 727.02[3].

■ The complaint alleges that the debtor transferred or concealed ownership of two businesses, ABC Tire Company and Bernson Investments, Inc. However, the proof reflects that the debtor never had any interest in ABC Tire Company. It was formed by the ultimate purchaser of Acme Recapping, Inc. Acme was a joint venture in which the debtor was president and had an interest. His interest, worth $75,000 was paid to Bernson Investments, Inc., $40,000 in cash and a $35,000 note ten months before bankruptcy.

I treat the complaint as amended to conform to the proof under B.R. 715(b) and as so amended to allege that the debtor fraudulently transferred or concealed the proceeds of the sale of his interest in Acme. 6 *Wright & Miller*, § 1493.

The debtor did not disclose the sale of his interest in Acme nor his transfer of the sale proceeds to Bernson Investments, Inc. Questions 12(a) and (b) of his Statement of Affairs specifically required disclosure of all such transactions within the year before bankruptcy. He reported none. I find that the omission was deliberate and intended to conceal a voidable transfer and thus secrete this asset from his creditors.

Bernson Investments, Inc. was formed three years before bankruptcy as the successor to Bernson Investments, a fictitious name for the construction business owned and operated by the debtor and his wife. It presently holds some real estate and several mortgages.

The corporation, which continued in the construction business, gave every indication of being the debtor's alter ego. It bore his name. He served as president. He was its only manager. He signed its checks. Its business address and office was his home. His wife, who was also an officer, worked full time with him and kept its books. It paid at least some of his personal expenses. Through a fictitious name, it provided the debtor with his personal car. His salary checks from the corporation were returned

to the corporation. The debtor told his wife and stepson that this was the family business which would provide for the family's future.

The debtor was divorced two weeks before bankruptcy. By an antenuptial agreement of February, 1980, it was stipulated that the wife renounced any interest in the corporation. She got the home. Both parties have complied with that agreement.

It is the defendant's contention that since August 5, 1977 (two days after the corporation was formed) all the corporate stock has been held by the debtor in trust for Shaw. The wife never heard this contention until after the divorce. The contention is supported only by the testimony of the debtor, Shaw and the debtor's attorney who has produced only a copy of an unexecuted Declaration of Trust to document the trust. He testifies that he saw the instrument executed and that the corporate stock was issued to the debtor as trustee for Shaw. The existence of this trust is disclosed in the bankruptcy petition.

Shaw tells us she invested about $30,000 in the corporation, but she has nothing in her possession to document any interest in the business. There is no other hint that she ever had any connection with the business. She has never received a penny from it. She has relied completely on the debtor's attorney.

Shaw, who was widowed in 1953, and who is a postal clerk, has been a close friend of the debtor since before his marriage. She presently supports the debtor.

The corporation appears to hold all that the debtor has produced by his work since August, 1977, when the corporation was formed. The assets are substantial.

From the record before me, I find that the alleged trust did not exist at the time of bankruptcy, and does not exist now, if indeed it was ever created, and that the debtor has deliberately fabricated the trust with the intent of delaying and defrauding his creditors. The attorney's testimony is insufficient. There is no adequate explanation for the failure to produce the alleged executed trust instrument. It lay peculiarly within the debtor's ability to provide documentation or corroboration of Shaw's investment and the creation and continuation of the trust. His failure to do so in the face of the pervasive indicia of his complete ownership makes it impossible for me to believe the self-serving testimony of the debtor and Shaw. *Allstate Finance Corp. v. Zimmerman*, 5 Cir. 1964, 330 F.2d 740, 744; *International Union (UAW) v. N.L.R.B.*, D.C.Cir.1972, 459 F.2d 1329, 1335.

By this finding, I do not foreclose Shaw from proving her investment and her interest if and when the trustee claims title to the corporate stock and assets. That relief is not sought in Count II and is not before me. Shaw is not a party with respect to the issues in Count II and, therefore, is before me solely as a witness.

It follows that the debtor's discharge must be denied under § 727(a)(2)(A) on account of his attempted concealment of the proceeds of the sale of Acme as well as his attempted concealment of those proceeds and his other assets in Bernson Investments, Inc. As is required by B.R. 921(a), a separate judgment will be entered in accordance herewith. Costs will be taxed on motion.