In re Michael W. KLEIN, aka Michael W. Klein, Jr., Debtor.

**FIRST HAWAIIAN BANK, Plaintiff,**

v.

**Michael W. KLEIN, aka Michael W. Klein, Jr., Defendant.**

**Bankruptcy No. 83–00209.
Adv. No. 83–0150.**

United States Bankruptcy Court,
D. Hawaii.

July 24, 1984.

---

Philip D. Bogetto, Honolulu, Hawaii, for debtor.

Jeffrey E. Brunton, Tod Z. Tanaka, Honolulu, Hawaii, for First Hawaiian Bank.

JON J. CHINEN, Bankruptcy Judge.

The Complaint to Determine Dischargeability of Debt filed by First Hawaiian Bank came on for trial before the Bankruptcy Court on May 14, 1984. The Debtor was represented by Philip D. Bogetto, Esq. and First Hawaiian Bank was represented by Tod Z. Tanaka, Esq. and Jeffrey E. Brunton, Esq. Having considered the evidence and arguments of counsel, having reviewed the record and file herein, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Defendant Michael W. Klein, aka Michael W. Klein, Jr., debtor herein (hereafter "Debtor"), filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 2, 1983.

2. Plaintiff First Hawaiian Bank (hereafter "Plaintiff") is a Hawaii corporation with its principal place of business in the City and County of Honolulu, State of Hawaii.

3. Prior to these proceedings, Debtor lived with his wife, Patricia, and two minor children at 44–420 Kaneohe Bay Drive, Oahu, Hawaii, (hereafter "Property") in a home built in 1961 on leasehold property. Upon divorce, Debtor assigned his interest in the Property to his ex-wife and vacated the premises. Upon the death of his ex-wife, Debtor returned to the Property which had been distributed by the Probate Court to the two minor children. In December 1973, Debtor was appointed guardian of the person and of the estate of the two minor children. At this time, the Property was subject to a mortgage executed in 1961 in favor of Equitable Life Ins. Co.

4. As guardian of the estate of the two minor children, Debtor exercised the rights of ownership over the Property on behalf of the estate and for its benefit. He regularly made the monthly payments on the mortgage. In addition, after his ex-wife's death, Debtor spent over $150,000.00 for improvements to the Property. He had a swimming pool constructed, installed a shake roof, repainted the home on three different occasions, paid the real property taxes and purchased new appliances and furniture.

5. In 1978, Debtor was employed at Hawaii Homeowner's Club. Because he paid all of the expenses for the Property, he believed that he was the owner. Thus, he applied for a homeowner's loan in the sum of $10,000.00 from Plaintiff in 1978.

6. In the loan application, Debtor presented, upon Plaintiff's request, a financial statement dated July 25, 1978, in which Debtor represented that he had title to the Property as of July 24, 1978.

7. The principal requirement of Plaintiff's homeowner loan program was ownership of Debtor's home. Yet, in reviewing the loan application, Plaintiff did not verify the information contained in the financial statement. Without requesting any title report on the Property, Plaintiff approved the loan. The promissory note for $10,000.00 was executed by Debtor on August 17, 1978.

8. Upon receipt of the $10,000 from the homeowner's loan, Debtor opened a checking account at Plaintiff's Kapiolani branch and deposited the entire proceeds in the account.

9. At the same time that the homeowner's loan was made on August 17, 1978, Debtor applied for a Yes Check Reserve Line Account (hereafter "Yes Check Account"). In his application, Debtor failed to disclose the $10,000.00 homeowner's loan from Plaintiff.

10. Prior to the approval of the Yes Check Account, Plaintiff received a Credit Line Report dated August 25, 1978 (Exhibit P–11), which clearly showed the $10,000 loan from Plaintiff to Debtor. The Yes Check Account was approved on November 22, 1978 and Mr. Mark Felmet, testifying on behalf of Plaintiff, acknowledged that, by said date, Plaintiff was aware of the homeowner's loan.

11. Debtor made regular payments on all of his obligations until January 20, 1981 when he was seriously injured in an automobile accident. He has not been working since then and has not been able to pay his debts.

### CONCLUSIONS OF LAW

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1471, 11 U.S.C. § 523, and Rule 7001 et seq., of the Bankruptcy Rules.

Section 523(a)(2)(B) provides that the debt of an individual debtor will not be discharged.

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

. . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

■ Plaintiff has the burden of proof to establish the nondischargeability of a debt. For Plaintiff to prevail in the instant case, he must prove all of the elements contained in Section 523(a)(2)(B). *In Re Archangeli,* 6 B.R. 50, 2 C.B.C.2d 1209 (D.Maine, 1980); *In Re Saunders,* 37 B.R. 766 (Bkrtcy.N.D. Ohio 1984).

■ Plaintiff has shown that Debtor, in his application for homeowner's loan, represented that he was the title owner of the Property when in fact title was in the names of his two minor children. Plaintiff has also shown that Debtor, in his application for the Yes Check Account, failed to list the $10,000 homeowner's loan in favor of Plaintiff. Plaintiff has thus satisfied the first two requirements under Sec. 523(a)(2)(B).

However, the Plaintiff's reliance on the statement made by Debtor in his application for the homeowner's loan was not reasonable. When an individual represents that he is the title owner of a property in an application for a homeowner's loan, it is neither reasonable nor professional for a bank to approve the loan without requiring the loan applicant to submit a title report or some evidence of ownership.

As the Court stated in *In Re Triple A Sugar Corp.,* 13 B.R. 969 (Bkrtcy S.D.Ohio 1981), "The majority of cases make it clear that the creditor has a duty to make a reasonable effort to check the credit rating of the Debtor and not rely upon just the financial statement." In finding the debt in question dischargeable, the Court criticized the bank for not having made a title examination "to determine if the Breens had on record any mortgage whether on the Dayton lot or any other property."

With reference to the Yes Check Account, Debtor's omission of the $10,000 homeowner's loan in the application does not overcome the fact that, in spite of this omission, Plaintiff was in possession of a report revealing the $10,000 homeowner's loan. Plaintiff's statement that it would not have approved the Yes Check Account if it were aware of the $10,000 homeowner's loan is without merit. If Plaintiff chooses to ignore the information and record in its own file, then it must bear the consequences.

The Court finds Plaintiff's reliance on the applications for the homeowner's loan and the Yes Check Account not to be reasonable. Plaintiff has not met the third requirement of Section 523(a)(2)(B), and thus said debt to Plaintiff is dischargeable.

A judgment will be signed upon presentment.