In re Kenneth WOLF and Sandra
Wolf, Debtors.

MONROE INDUSTRIAL
BANK, Plaintiff,

v.

Kenneth WOLF and Sandra
Wolf, Defendants.

Bankruptcy No. 84 B 4936 M.
Adv. No. 85 G 058.

United States Bankruptcy Court,
D. Colorado.

Dec. 8, 1986.

Rebecca Elliott, Fort Collins, Colo., for Monroe Indus. Bank.

David S. Power, Fort Collins, Colo., for Kenneth Wolf and Sandra Wolf.

## MEMORANDUM OPINION AND ORDER

CHARLES E. MATHESON, Bankruptcy Judge.

This matter comes before the Court on a Complaint to determine the dischargeability of a debt pursuant to Section 523 of the Bankruptcy Code. Trial was held on July 2 and July 26, 1985. At the close of the testimony, the Honorable Jay Gueck ordered the parties to submit written closing arguments and took the matter under advisement pending the submission, by the parties, of those arguments. When Judge Gueck announced that he was resigning from the bench, he had not made a decision on this matter. On December 16, 1985, the Honorable Roland Brumbaugh ordered a rehearing since the authority of Judge Gueck would expire before an order could issue from the Court on the case.

This Court entered an order on April 24, 1986, setting this matter for trial on June 19, 1986. Responding to the April, 1986 order, the parties stipulated to having this Court determine this matter based upon a transcript of the two days of trial testimony of July, 1985, exhibits introduced at that trial and the written closing arguments of the parties.

After reviewing the transcripts, the exhibits and the closing arguments of the Plaintiff and the Defendants, the Court makes the following findings of fact and conclusions of law and enters judgment accordingly.

## FACTUAL BACKGROUND

The Defendants, Kenneth and Sandra Wolf, ("the Wolfs") opened a shop, "All Crafts" in Fort Collins, Colorado, sometime during the month of April, 1983. The business included the sale of craft supplies, craft kits, handcrafted gifts and the giving of classes and demonstrations involving different types of crafts. The shop was operated as a sole proprietorship with Sandra Wolf ("the Defendant") as the owner. At the same time as Sandra Wolf was operating the shop, Kenneth Wolf was employed as a plant mechanic at Colorado State University. Sandra Wolf made all the decisions with respect to the day to day operations of All Crafts.

In June of 1983, the Defendant made a decision to expand her business but needed a $35,000 line of credit in order to purchase additional inventory. Starting at this time and continuing into July, 1983, the Defendant contacted seven banks including the Plaintiff, Monroe Industrial Bank ("Monroe") in the Fort Collins area. At the initial meeting, she left with the bank a booklet (what the Defendant described as her "Blue Book") dated June, 1983, which outlined the nature of the business of All Crafts and future plans for expansion of that business. The booklet also included a personal financial statement showing assets of $137,900.00 and liabilities of $83,-800.00 including a first deed of trust for $69,000.00 and a second for $3,800.00 on the Wolfs' home. Additionally, on the first page the collateral of All Crafts was listed as equipment valued at $17,010.00 and inventory valued at $17,317.00. These amounts were broken down and individual items listed on pages 3 and 4 of the booklet, respectively. Although the booklet listed the monthly rent paid by All Crafts, no other financial information was outlined in the booklet.

The Defendant contacted Monroe sometime during July, 1983 and made an appointment with a loan officer to discuss her requested line of credit. At the initial meeting the Defendant discussed her shop and plans in a general manner and presented the loan officer with the Blue Book for her review. At a second meeting, the loan officer informed the Defendant that Monroe would be unable to extend the line of credit on the business alone, since the business was so new. However, the loan officer indicated that a loan would be possible

by the Defendant giving Monroe a Second Deed of Trust on the Wolfs' home. The loan officer gave the Defendant a loan application form and instructed her to fill it out as completely and accurately as possible.

The Defendant took the application home and, along with Kenneth Wolf, filled it out. Not all of the blanks on the application were filled out but both the Wolfs signed the application and dated it July 14, 1983. On the application they indicated that the purpose of the loan was for a "retail store" and the borrower was "Sandra Wolf" and the co-borrower, "Kenneth Wolf." The application listed the total assets of the Wolfs at $167,000.00 and total liabilities of $80,750.00, for a net worth of $86,250.00. Included as an asset was $27,000.00 listed under "Net Worth of Business Owned (Attach Financial Statement)." No supporting financial statement was attached to the application with respect to the business. Listed under "liabilities and pledged assets" are installment debts to AVCO Financial Company and Northern Bank and a real estate loan to Bankers Life. No other liabilities are listed and, indeed, under a space for "Other debts including stock pledges," a "N/A" is indicated.

After completing the application the Defendant made a third appointment with Monroe and returned to its office with the signed application. This third meeting occurred on July 14, 1983. At the third meeting the loan officer went over the application with the Defendant, filling in spaces which the Wolfs had left blank. The Defendant testified that she was unsure what Monroe wanted in those spaces and so she left them blank. Additionally, the Defendant testified that since the application lacked sufficient room to list all the debts associated with All Crafts, she left those debts off the loan application. She also testified that she had asked the loan officer at the third meeting whether she wanted a list of those debts. The Defendant testified that the loan officer told her "no", that there was no need to do so, and that the application contained sufficient information.

After the third meeting, Monroe verified the information on the loan application by sending written inquiries to Kenneth Wolf's employer and to the financial institutions which were listed by the Wolfs. The Defendant also provided Monroe with some cash flow projections for All Crafts. These projections represented projections for future operation of the business and were, according to the Defendant, prepared for the Small Business Administration (SBA). The Defendant testified that the $27,000.00 "Net Worth" included as an asset in the loan application represented what had been spent to start up the craft shop business. Monroe also obtained a Credit Bureau report on the Defendants. Although the loan officer testified that with respect to making commercial loans, Monroe often inspected businesses to verify the inventory and equipment, in the instant case the bank did not inspect the equipment and inventory of All Crafts and did not obtain an appraisal of the equipment and inventory. Additionally, the bank did not obtain a Uniform Commercial Code (UCC) lien check to see if there might be liens on the inventory and equipment of All Crafts.

Monroe loaned the Defendants $20,000.00. Monroe's Loan Committee Approval Sheet indicated that the type of loan was to be for a "2nd mortgage" and the purpose of the loan was to "purchase inventory as needed." The sheet also indicated that the Defendant's home was appraised for loan purposes at 90% of its market value of $85,000.00, or $76,500.00, and that the inventory and equipment listed by the Defendant as $34,000.00 was appraised at 50% of its value for $17,000.00, for a total of $93,500.00. From this amount $69,000.00–representing the first deed of trust was subtracted, which left a loan value of $24,500.00. The loan of $20,000.00 was made upon the remaining loan value of $24,500.00. Included on the Approval sheet was a section listed as "Qualifications." This section compared the loan applicant's gross income to mortgage payments and gross income to total debts and

established limits for these ratios. In both instances, the Wolf's financial situation exceeded Monroe's established guidelines.

The closing date on the loan was July 29, 1983. Both the Wolfs attended the closing. At the closing, Monroe presented for their signatures a promissory note for $20,-000.00, a second deed of trust encumbering their residence, and a typed loan application. Monroe also presented for Sandra Wolf's signature alone a security agreement and financing statement granting to Monroe a security interest in the equipment of All Crafts plus "inventory now owned or later acquired." The typed loan application was different from the hand written application submitted by the Wolfs on July 14, 1983, in that the purpose of the loan was now listed as "refinance" and the "borrower" was now listed as "Kenneth Wolf" and the "co-borrower" was listed as Sandra Wolf. The respective amounts listed under "assets and liabilities" and "pledged assets" had also been changed. Those changes were a result of the review made by the loan officer with the Defendant on July 14, 1983, and the verifications made by Monroe after the application had been submitted by the Wolfs. The various documents were signed by the Defendants and the funds were dispersed by Monroe and the second deed of trust, held by AVCO Finance, was paid off. The Defendant testified that she had ample time to review the documents at the closing but that she "... just signed a bunch of papers. I'd go down through and sign."

At the same time the Defendant was negotiating with Monroe, she had also contacted University National Bank of Fort Collins. ("University"). Following the same procedures as indicated above, the Defendant presented her "Blue Book" to University. Based on the Blue Book and the financial information contained therein, University agreed to loan her $18,000.00 as a business loan. The Defendant signed a promissory note, financing statement and security agreement granting to University a security interest in "all equipment now owned and hereafter acquired" and "all inventory now owned and hereafter ac-

quired and proceeds thereof." The loan from University closed on July 12, 1983, two days before the Defendant submitted her application to Monroe.

The loan to University was a single payment loan due at the maturity of the note. The note was due on January 9, 1984. When the note became due, the Defendant was unable to pay off the note and thus requested an extension on the loan. At the time the Defendant requested an extension, she presented to University a Financial Statement dated November 30, 1983, which had been prepared by a certified public accountant at the request of the Defendant. In the financial statement under note 2, "Notes Payable", the statement indicates that the note to Monroe was secured "... by real property owned by" the Defendant and the note to University was secured by "inventory and equipment." The loan from University was extended for six months. At the end of the six-month period, the Defendant was unable to pay off the loan and turned the keys of All Crafts over to University. University liquidated both the equipment and inventory through a liquidation sale.

Meanwhile, with respect to the Monroe loan, the Wolfs made monthly payments on their loan until January 29, 1984, when they stopped. In April, 1984 they commenced making partial payments but stopped those payments on May 9, 1984. After the payments stopped for a second time in May 1984, Monroe mailed a notice to cure to the Wolfs. They did not respond to Monroe with respect to the right to cure. Thereafter, Monroe investigated All Crafts and found the shop closed and locked. Monroe foreclosed on the real property listed in the second deed of trust but was unable to collect on the equipment and inventory since University had previously sold those items.

During October 1983, the Wolfs took out a loan from Aetna Finance to purchase a quilting machine for the Defendant pledging the quilter as collateral. The application for the loan is dated October 28, 1983,

and lists outstanding loans to Banker's Life with a then present balance of $69,000.00 and Monroe with a then present balance of $14,000.00. An accompanying financial statement indicates the Wolfs were obligated to Monroe Bank, Aetna Finance, Northern Bank, Banker's Life and various credit card companies. The financial statement indicates that the outstanding balance due Monroe was $15,000.00. Neither the loan application nor the financial statement listed the obligation to University. The Wolfs were approved for the loan on the quilting machine.

On May 24, 1984, Kenneth Wolf applied for a loan of $500.00 with Norlorco Credit Union. As part of his application Mr. Wolf filled out a loan application and signed it. The application listed obligations to Banker's Life, a mortgage to Norlorco on a truck and various credit card liabilities. The application does not list the obligation to Monroe. Mr. Wolf was approved for the $500.00 loan.

The Wolfs filed their Chapter 7 bankruptcy on October 5, 1984.

## DISCUSSION

The Plaintiff, Monroe, has brought its complaint based upon Section 523(a)(2)(B) of the Code. This Section states:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Bankruptcy courts have strictly construed statutory exceptions to discharge against creditor's objections and liberally in favor of discharge for debtors. *In re Fiedler*, 28 B.R. 28 (Bankr.Pa.1982). A creditor must establish non-dischargeability by clear and convincing evidence. *In re Rodriquez*, 29 B.R. 537 (Bankr.E.D.N.Y.1983); *In re Whiting*, 10 B.R. 687 (Bankr.E.D.Pa.1981); *In re O'Karma*, 46 B.R. 422 (D.C.M.D.Pa. 1984). Thus, a creditor must show that (1) the defendant made a written representation respecting his financial condition; (2) the representation was materially false; (3) the document or documents were issued by the defendant with an intent to deceive the creditor; and, (4) the creditor reasonably relied on the representation in making a decision to extend the debtor money or credit. *In re Jackson*, 32 B.R. 549 (Bankr. E.D.Va.1983); *United Leasing Corp. v. Roop*, 48 B.R. 310 (D.C.E.D.Va.1985).

Clear and convincing evidence is that evidence which is something more than a mere preponderance but which is something less than evidence which convinces the trier of fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). At least one court has defined it as:

that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. *Hobson v. Eaton*, 399 F2d 781, 784 (6th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1189 [, 22 L.Ed.2d 459] (1969).

Based on the above principles, the Court finds that Monroe has met its burden with respect to establishing (1) that the Wolfs made written representations respecting their financial condition; (2) that the representations made were materially false; and, (3) that the documents were issued by the Wolfs with an intent to deceive Monroe. However, the Court finds that Monroe

failed to carry its burden with respect to showing that it reasonably relied on the representation in making its decision to loan the Wolfs the money.

## THE WRITTEN REPRESENTATION

In its case in chief Monroe introduced the loan application dated July 14, 1983, and the All Crafts booklet dated June 1983. The loan application was signed by the Wolfs and does not disclose the loan obligation to University for $18,000.00 nor the fact that the equipment and inventory were pledged to University as collateral on July 12, 1983. It is clear from the application that it was filled out by the Wolfs and was intended to be a representation of their financial condition. The booklet included statements as to the inventory and equipment plus additional lists which detailed both those items. Again, it is clear that the Defendant, Sandra Wolf, prepared the booklet. Neither exhibit was objected to by the Wolfs. Clearly, Monroe has established this element of its case.

## MATERIALITY

■ In order for a representation to be materially false the information supplied by a defendant to a creditor must not only be substantially inaccurate but it must also be information which affects the creditor's decision-making process in determining whether to make the loan or not. *In re Hunt*, 30 B.R. 425 (D.C.M.D.Tenn.1983). The failure to include outstanding obligations on a loan application may have the effect of rendering the application materially false. *Abbott v. Regents of University of California*, 516 F.2d 830 (9th Cir.1975).

Here Monroe has established that the Defendant, Sandra Wolf, had concluded a loan with University two days before completing the Monroe application and that the application does not list the University loan nor the fact that the equipment and inventory were used as security for the University loan. Also, from Monroe's Loan Committee Approval Sheet, it is evident that without the inventory and equipment the loan value remaining would not have been

$24,500.00 but would have been $7,500.00—representing the difference of 50% of $34,-000.00 which Monroe took as the value of the inventory and equipment. Without the $17,000.00 of value in the inventory and equipment, Monroe would not have been in a position to make a $20,000.00 loan to the Defendant. Had the $18,000.00 obligation to University been listed on the application, it would have increased the Wolfs' total liabilities to $98,750.00 and would have represented some 18% of their total debts. Leaving off such an amount on this application renders the loan application of July 14, 1983, materially false.

## INTENT

Creditors are required to show that the defendant actually intended to deceive the creditor in extending the credit. *In re Hunt, supra.* Such intent is usually never shown by direct evidence but can be inferred where a written statement is knowingly false or made with a reckless disregard for the truth. *United Leasing Corp. v. Roop, supra.* A reckless disregard for the truth has been established where an individual signs a loan application without reading the application. *In re Anderson*, 10 B.R. 607 (Bankr.S.E.Fla. 1981); *In re Coughlin*, 27 B.R. 632 (Bankr. App. 1st Cir.1983). Other instances of intent have occurred where the applicant knows that the application contains falsities yet remains silent as to those falsehoods. *In re Biedenharn*, 30 B.R. 342 (Bankr.W.D.La.1983).

In this case, the record indicates that there might have been some misunderstanding between the parties with respect to the collateral for the Monroe loan. The Defendant claims that she understood the collateral to be their home and Monroe insists that it was to be the home and the assets of the craft shop. However, all misunderstanding should have been resolved on July 29, 1983, when, at the closing, Monroe had prepared its financing statement and security agreement in the shop's inventory and equipment and submitted it to Defendant for her signature.

The record is clear that Defendant had time to review all the documents at the closing and there is nothing in the record to indicate that Defendant disclosed the loan and security interest of University. The opposite is true since the Wolfs were presented with a typewritten loan application which they signed and which failed to list the University loan and collateral pledge. The November 30, 1983, financial statement of All Crafts continued to show that the Monroe note was secured only by an interest in real property owned by the Wolfs.

■ The Court finds Defendant's testimony that she was never clearly aware that the equipment and inventory had been pledged to Monroe for security to be completely without merit. Her continued silence throughout the period of negotiation with Monroe, coupled with her apparent failure to read the documents she signed at the July 29 closing, leads the Court to conclude that Defendant signed the documents in total disregard for the truth.

Subsequent conduct of an individual is often probative of that individual's intention on prior occasions. See, for example, *Farmers Co-op Ass'n of Talmage, Kan. v. Strunk,* 671 F.2d 391 (10th Cir.1982); *In re Bernson,* 15 B.R. 100 (Bankr.S.D.Fla.1981); *Future Time, Inc. v. Yates,* 26 B.R. 1006 (D.C.M.D.Ga.1983). The omission by Kenneth Wolf on his May 24, 1984, loan application with Norlorco with respect to the Monroe loan and the Wolfs' failure to list the obligation owed to University on their October 28, 1983, application to Aetna Finance lend further weight and support to Monroe's position. For these reasons the Court finds that Monroe has met its burden with respect to establishing the requisite intent.

### REASONABLE RELIANCE

In order to prevail Monroe must show that it reasonably relied on the false financial statement in making the loan to Defendants. Thus Monroe is required to show that not only did it rely on the written representations but also that that reliance was reasonable. 11 U.S.C. § 523(a)(2)(B)(iii); *In re Hunt, supra.*

■ Partial reliance has been held to be sufficient so long as that reliance is reasonable. *In re Besch,* 42 B.R. 45 (Bankr.N.D. Ill.1984). Thus it follows that where a decision to make a loan is based upon certain statements that are true and certain statements that are materially false, the Court must inquire into the reasonableness of the reliance with respect to those materially false statements.

What is established from the testimony is that the loan officer's decision to make the loan is partially based upon the booklet prepared by Defendant and presented to her at their initial meeting in July 1983 and the verified monthly income of Kenneth Wolf. Indeed, on redirect examination, the loan officer testified:

> I took into account that we (Monroe) had only projections for the business (All Crafts) so I was mainly relying on the income that had been verified plus the fact that I felt very good about the nature of the business, the preparation that had been made for the application, about the owner's knowledge of the business. (Transcript for July 2, 1985, page 36).

There is nothing in the record, nor are there any allegations, claiming that the booklet was materially false. The booklet was dated prior to the initial meeting Monroe and Defendant.

■ Turning to the loan application dated July 14, 1983, the Court finds that Monroe did rely in part on that application but that the reliance was not reasonable considering the circumstances surrounding the making of the loan. An emerging test utilized by bankruptcy courts to determine the reasonableness of creditor's reliance is that which is found in such cases as *Matter of Patch,* 24 B.R. 563 (Bankr.D.C.Md.1982) and followed by other bankruptcy courts. See *In re Ardelean,* 28 B.R. 299, (Bankr.N. D.Ill.1983); *In re Denenberg,* 37 B.R. 267 (Bankr.Mass.1983); *In re Saunders,* 37 B.R. 766 (Bankr.N.D.Ohio 1984); and *In re Delano,* 50 B.R. 613 (Bankr.Mass.1985). These cases compare the creditor's actual

conduct in extending the credit to the creditor's own business practice and standards and customs of the industry in light of the surrounding circumstances existing at the time the application was made and credit was extended.

Applying this test to the matter at hand it is clear that Monroe failed to follow its own dictates in approving the loan. The testimony is that the inventory was not inspected nor appraised by Monroe prior to making the loan, although such practices were followed by it with respect to other commercial loans. Also, the Loan Committee Approval Sheet indicates that the ratios of gross income to mortgage payments and gross income to total debts return exceeded the limits established by Monroe.

Other factors which cast doubts on the reasonableness of Monroe's reliance include the fact that prior to the transaction in question, Defendant had had no contact with Monroe. Monroe did not conduct a UCC lien search which would have disclosed the existence of the liens of University well in advance of the closing on July 29, 1983. The lack of a supporting financial statement with respect to the value listed as net worth of the business owned must be considered. Despite the loan officer's testimony that she considered the booklet to be a financial statement relating to the business, there is nothing in that booklet that would support the $27,000.00 value assigned by Defendant. Also, there is Defendant's testimony that according to the loan officer it was not necessary that she include the debts of the business on the application and that the application contained sufficient information with respect to All Crafts total liabilities.

Other courts dealing with similar, but not necessarily cumulative, circumstances have found the claimed reliance by the creditor in each individual circumstance not to have been reasonable. See, for example, *In re Klein,* 41 B.R. 626 (D.C.Hawaii 1984) where the creditor ignored a credit report; *In re Danesi,* 6 B.R. 234, 21 C.B.C. 593 (Bankr.S.D.N.Y.1979) and *In re Consin,* 38 B.R. 505 (Bankr.E.D.Tenn.1984) where the

creditor had no dealings with the debtor prior to the disputed transaction; and *In re Whitting,* CCH para. 67, 995 (Bankr.E.D. Penn.1981) where the creditor informed the debtor that it was unnecessary to list all debts.

For the above reasons, the Court concludes that Monroe has failed to meet the substantial burden of presenting clear and convincing evidence with respect to each element under Section 523(a)(2)(B), and

IT IS THEREFORE ORDERED that judgment enter in favor of Defendants Kenneth Wolf and Sandra Wolf, and

IT IS FURTHER ORDERED that the debt owed by Defendants Kenneth Wolf and Sandra Wolf to Plaintiff Monroe Industrial Bank be discharged by reason of Defendants' Chapter 7 proceedings filed October 5, 1984.

Judgment to enter accordingly.