In re Mitchell J. PRETNER and Ellen G. Pretner, Debtors.

DELLSON, INC., Plaintiff,

v.

Mitchell J. PRETNER and Ellen G. Pretner, Defendants.

Bankruptcy No. 88 B 16365 J.
Adv. No. 89 E 0555.

United States Bankruptcy Court,
D. Colorado.

Feb. 15, 1990.

John B. Kusic, Nicholls & Kusic, Denver, Colo., for plaintiff.

Jeffrey Cohen, Alderfer, Herm & Cohen, Denver, Colo., for defendants.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.[*]

Heard on September 27, 1989 on the Complaint of Dellson, Inc. ("Dellson") seeking to have its debt with the debtors, Mitchell and Ellen Pretner ("Pretner"), declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B)[1]. Pretner denies the allegations in the complaint, contends that the financial statement he submitted to Dellson

---

[*] Of the District of Rhode Island, sitting by designation.

1. At the hearing, the parties agreed to dismiss the defendant, Ellen Pretner, from this adversary proceeding, and it was so ordered.

was not materially false, and argues also that he did not intend to deceive the plaintiffs by the use of this financial statement.

The relevant facts may be summarized as follows:[2] In 1985, Dennis Wilson and his wife, Michelle Wilson, through a corporation known as Dellson, Inc., owned a pizza restaurant in Breckenridge, Colorado, which they decided to sell. To accomplish this, Dellson hired a broker to list the business for sale, and subsequently received three or four offers, one of which came from the debtor, Mitchell Pretner. With his offer, Pretner submitted a financial statement which represented his net worth as $356,000 (Plaintiff's Exhibit C). Pretner's major asset, valued at $230,000, was described as a "50% equity interest in trust for the benefit of Mitchell and Gary Pretner (pursuant to Will of Louis H. Abramson)." Dennis Wilson testified that he rejected the other offers in favor of Pretner, based on his superior financial position. However, before accepting the Pretner offer, Wilson's broker contacted Wolf Fleiss, Pretner's accountant and trustee of the trust, who verified Pretner's 50% interest in the trust listed on his financial statement. Based on this information and verification, Wilson opted in favor of Pretner's offer, which he accepted on November 1, 1985. (*See* Plaintiff's Exhibit E). The Wilsons agreed that as one of the terms of the sale, they would hold a promissory note for $130,000 of the $230,000 purchase price, which the Pretners would pay over ten years at 10% interest. The closing took place on February 3, 1986. Over the next two years, Pretner consistently made the required payments under the February 3, 1986 note (Plaintiff's Exhibit P), but in November, 1988, he ceased making payments. Unable to locate the Pretners, Wilson went to the restaurant and discovered a notice on the front door stating that the restaurant would be closed until the beginning of the ski season. Not until sometime in January or February, 1989, did Wilson learn that the debtors were attempting to sell the business. At about that time, Pret-

ner presented Wilson with a potential buyer, which he ultimately rejected after determining that the prospective purchaser lacked the financial ability to sustain the note. Wilson advised Pretner that the only way he would approve the proposed buyer was if Pretner, on account of his presumably superior financial status, agreed to remain obligated on the promissory note. Pretner rejected this offer, and instead threatened to file bankruptcy and, when reminded about the value of his interest in the trust, declared that he "had ways of getting around that."

In fact, the Pretners did file bankruptcy on November 30, 1988. In their schedules the debtors do not list the trust fund as an asset of the estate, but instead take the position that the trust is a spendthrift one which pays the debtors only $125 per month as income. (*See* Plaintiff's Exhibit G, Schedule B–3). In addition thereto, however, pursuant to the terms of the trust, Mitchell Pretner receives a distribution every five years, beginning on his 25th birthday and ending on his 35th birthday. To date, Pretner has received two distributions of $90,000 each. His next distribution, which will be his last, is to be made in 1993. At the trial, Pretner admitted that he never advised Wilson that his access to the trust res was limited to a distribution made only once every five years, or that his ability to borrow against a future distribution was subject to, and completely dependent upon, the approval of the trustee. In fact, Pretner remarked that he didn't think it was necessary to inform Wilson of these restrictions. Pretner also conceded that nowhere on the financial statement submitted to Wilson (Plaintiff's Exhibit C) does it appear that there is any limitation on his access to the trust, which he valued at $230,000. In addition, when pressed, Pretner did admit that he not only wanted, but also intended for the Wilsons to rely on this financial statement as inducement to sell the business to him.

---

**2.** This decision constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

To obtain the down payment money to consummate the sale in 1986, Pretner sought and obtained the approval of the trustee to "borrow" $90,000 against his next distribution, which was due in February 1988 [3]. In his deposition, Fleiss, the trustee, admitted that although the trust calls for specific and designated distribution dates, "if there is a valid business reason then we, as trustee, have a right to distribute or advance the monies as a loan against future distributions." (Deposition of Wolf Fleiss, September 25, 1989, p. 32, lines 24, 25, p. 33, line 2). Moreover, Fleiss recognized that Pretner's access to his 50% equity interest in the trust was "[d]ependent·upon the discretion of the trustees" and that the trustees' exercise of their discretion is "[d]ependent upon the purpose and the valuation made by the trustees as to whether it was a valid investment or whatever." (Deposition of Wolf Fleiss, p. 48, lines 14–25).

## DISCUSSION

To have a debt declared nondischargeable pursuant to § 523(a)(2)(B), the creditor must prove, by clear and convincing evidence, that:

(1) the debtor made a written representation respecting his financial condition;

(2) which representation was materially false;

(3) which was published with the intent to deceive;

(4) which representation was reasonably relied upon by the creditor in making a decision to extend money or credit to the debtor.

*Driggs v. Black (In re Black)*, 787 F.2d 503, 505–506 (10th Cir.1986); *Enterprise National Bank v. Zakovich (In re Zakovich)*, 72 B.R. 271, 273 (Bankr.D.Colo.1987); *Monroe Industrial Bank v. Wolf (In re Wolf)*, 67 B.R. 844, 848 (Bankr.D.Colo. 1986); *Armstrong Rubber Co. v. Anzman*

*(In re Anzman)*, 73 B.R. 156, 162–163 (Bankr.D.Colo.1986).

█ Material falsity in a financial statement can be premised upon

inclusion of false information or upon the omission of information about a debtor's financial condition. A financial statement which misrepresents the debtor's ownership of an asset or which does not disclose the true ownership of assets included within the debtor's property is materially false.

*In re Anzman, supra,* at 163.

In addition, the creditor must prove not only that the information supplied was substantially inaccurate, but also that the information received affected the creditor's decision-making process in determining whether or not to make the loan. *In re Wolf, supra,* at 849.

█ After a careful review of the information reported by Pretner on his financial statement to the Wilsons, we conclude that Pretner is responsible for a very substantial omission which renders the document materially false. Under the heading "assets," Pretner lists his interest in the Trust as $230,000, with total assets of $381,600. We agree with the plaintiff that the October 1, 1985 financial statement intends to report the debtor's assets at their current value, and that the $230,000 figure stated as Pretner's interest in the trust does not represent its current value as of October 1985. This conclusion is supported by the deposition testimony of the trustee, Mr. Fleiss, who admitted that the maximum trust fund money available to Mitchell Pretner at the time he offered to purchase the restaurant from the Wilsons was $90,000. (Deposition of Wolf Fleiss, p. 49, lines 1–17.) The debtor's written statement that his equity interest in the trust was $230,000 on October 1, 1985, without any caveat or qualification regarding the availability of said funds, is a blatant misrepresentation[4] of his actual financial worth at the

---

**3.** This transaction was characterized as a loan, which was repaid with interest, by way of an offset against the next distribution made in February 1988.

**4.** We find that it was incumbent upon Pretner (and/or his agents) to disclose the limitation in his access to the trust funds. This disclosure would have alerted Wilson to make further inquiry, and would have afforded him the opportunity to make an informed decision as to

time he offered to purchase the restaurant from the Wilsons.

■ Next we consider whether Pretner intended to deceive the plaintiff by the use of this materially false financial statement. "Such intent is usually never shown by direct evidence but can be inferred where a written statement is knowingly false or made with a reckless disregard for the truth." *In re Wolf, supra,* at 849; *see also Central National Bank and Trust v. Liming (In re Liming),* 797 F.2d 895, 897 (10th Cir.1986); *In re Black, supra,* at 506 ("the requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts" *Id.* at 506). The requisite intent has been found where "the applicant knows that the application contains falsities yet remains silent as to those falsehoods." *In re Wolf, supra,* at 849 (citing *In re Biedenharn,* 30 B.R. 342 (Bankr.W.D.La.1983)).

The evidence is that Fleiss, the debtor's accountant, as well as the trustee, prepared the financial statement Pretner submitted to the Wilsons. Pretner reviewed this statement with Fleiss, and we hold him (Pretner) responsible for its contents. Nowhere on the document does it appear that there is a limitation on Pretner's access to the $230,000 held in trust, despite his knowledge (but unknown to Wilson) that he receives distributions only once every five years, and that his ability to borrow against a future distribution is subject to the approval of the trustee. Based on the omissions in the financial statement, together with Pretner's sophistication and his knowledge of its terms, as well as the past method of administering the trust, the element of intent to deceive should be and hereby is inferred. *See In re Anzman, supra,* at 163–164 and cases cited therein.

■ Finally, the plaintiff must show that it reasonably relied upon the false financial statement supplied by the debtor in deciding to extend credit. Here, there is no question that Dellson did just that. Wilson testified that of the four offers received, he

chose Pretner's, based on his "financial clout." Considering that $230,000 of Pretner's $381,600 total assets came from the trust, we find as a fact that Wilson relied on the existence of and amount represented to be available in this trust fund when he agreed to hold a note for $130,000 of the purchase price of the restaurant.

> To establish reliance, the creditor must show that its reliance on the false financial statement was "a contributory cause of the extension of credit" and "that credit would not have been granted if the lender had received accurate information."

*In re Anzman, supra,* at 164 (citing *In re Coughlin,* 27 B.R. 632, 637 (B.A.P. 1st Cir. 1983)).

Dennis Wilson, who we found to be an honest and credible witness, attested that he would not have accepted Pretner's offer, and would not have accepted a $130,000 note, if he had known about the true nature of the trust, which the debtor now characterizes as "spendthrift." We accept Wilson's testimony and find that he did rely upon the financial statement in deciding to accept Pretner's offer and in extending credit.

Wilson must also show that his reliance was reasonable. "To sustain its burden of demonstrating reasonableness a lender must show that it exercised ordinary diligence with respect to the loan." *In re Anzman, supra,* at 164 (citing *In re Denenberg,* 37 B.R. 267, 272 (Bankr.D.Mass. 1983)). Other courts have adopted a test which compares

> the creditor's actual conduct in extending credit to the creditor's own business practice and standards and customs of the industry in light of the surrounding circumstances existing at the time the application was made and credit was extended.

*In re Wolf, supra,* at 850–851 (other citations omitted).

The instant scenario is quite different from the typical one, where a loan is ex-

---

whether to do business with Pretner. It was the failure to disclose which deprived Wilson of the ability to make an informed judgment.

tended by a large financial institution to an individual debtor. Here, two private business people were involved in the sale of a restaurant, with the seller agreeing to finance a large part of the purchase price in the form of a promissory note, in order to consummate the sale. The seller hired a broker to assist him in selling the business and also to review the financial information submitted by prospective purchasers. Wilson's broker contacted Fleiss to verify the existence of the trust reported on the financial statement, and this constituted due diligence on the plaintiff's part, on the issue of reasonable reliance. No evidence was presented detailing the specifics of that conversation but we find that the seller's reliance on his broker's contact with Fleiss, and the verification of the existence of the trust was about as much as a reasonably prudent person, in the same circumstances, should be required to do. Accordingly, we hold that Wilson's reliance on Pretner's financial statement was reasonable.

Based on the foregoing, we conclude that the plaintiff has proved a cause of action under § 523(a)(2)(B), and is entitled to judgment for the balance due under the February 3, 1986 promissory note, plus interest and costs. Accordingly, it is ORDERED that the claim by Dellson, Inc. is declared to be nondischargeable.

Enter Judgment accordingly.