In re Charles H. RUWART, Jr., a/k/a Chuck Ruwart a/k/a C.H. Ruwart and Jane F. Ruwart, a/k/a Jane M. Ruwart, Debtors.

CHRYSLER CREDIT CORPORATION and American Motors Leasing Corporation, Plaintiffs–Appellants,

v.

Charles H. RUWART, Jr., and Jane F. Ruwart, Defendants–Appellees.

No. 88–K–1472.

Bankruptcy No. 87 B 12833 J.

Adv. No. 88 E 329.

United States District Court, D. Colorado.

May 31, 1990.

Donald B. Gentry, Grant, McHendrie, Haines & Crouse, Denver, Colo., for Chrysler & American Motors.

Jon L. Holm, Denver, Colo., for Ruwart.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this appeal is whether two creditors of the debtor actually and reason-

ably relied on financial statements supplied by the debtor in extending credit to him. The creditors, the Chrysler Credit Corporation and the American Motors Leasing Corporation, contend that the bankruptcy court erred in determining that they had not actually and reasonably relied on the statements in granting a directed verdict for the debtor, Charles H. Ruwart, Jr., in the creditors' adversary action under 11 U.S.C. § 523(a)(2)(B). I affirm.

## I. *Facts.*

Charles Ruwart and his wife, Jane Ruwart, operated a Thrifty rent-a-car business near Stapleton Airport in Denver, Colorado through an entity known as the Chuck Ruwart Leasing Company. Mr. Ruwart held a 60 percent interest in the leasing company; the remaining 40 percent was held by a relative of Mrs. Ruwart, Harold Meyer. To finance the purchase of vehicles for the rental car business, the leasing company obtained lines of credit from Chrysler Credit Corporation and American Motors Leasing Corporation. Chrysler extended the company a $2,000,000 line of credit and American Motors extended a $300,000 line of credit. These obligations were personally guaranteed by Mr. and Mrs. Ruwart.

In September, 1985, the leasing company filed for bankruptcy. Both Chrysler and American Motors were able to repossess a number of cars through the bankruptcy proceedings; however, a $375,000 deficiency remained on the Chrysler line of credit and a $31,498 deficiency on the American Motors line of credit. Chrysler and American Motors commenced separate actions against the Ruwarts to recover on their guarantees. The Ruwarts then filed for bankruptcy under Chapter 7 of the Code on October 26, 1987.

On April 22, 1988, Chrysler and American Motors commenced an adversary proceeding under § 523(a)(2)(B) of the Code, seeking a declaration that the Ruwarts' debts to them were nondischargeable because Mr. Ruwart had falsified information on the financial statements given to these creditors to induce them to extend the lines of credit.[1] After Chrysler and American Motors had presented their case, Mr. Ruwart moved for dismissal, claiming that the creditors had not established a material falsification of or actual and reasonable reliance on the statements. The bankruptcy court granted the motion, finding that Chrysler and American Motors had not actually or reasonably relied on the financial statements. The creditors now appeal this ruling.

## II. *Issues.*

A. Standard of Review.

■ The creditors raise the preliminary issue of the proper standard of review to be applied in this appeal. Although they correctly recite that the bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed *de novo*, the creditors argue that the bankruptcy court's determination should be reviewed *de novo* because the facts were largely undisputed and the question of the creditor's reliance is a mixed issue of law and fact.

The creditors' argument is not persuasive. In *First Bank of Colorado Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 678–79 (10th Cir.1987), the Tenth Circuit outlined the standard of review to be applied in bankruptcy appeals, essentially reciting the formula stated by the creditors, above. Then, considering the merits of the appeal, the court addressed whether the creditor had reasonably relied on the oral representations and written financial statement of the debtor in extending a loan to him. It concluded that "the bankruptcy court's finding of no reasonable reliance on the part of the bank is not clearly erroneous," thereby characterizing the issue as one of fact. *Id.* at 681. Contrary to the creditor's assertions, there is no meaningful way to distinguish *In re Mullet* from this case, and other courts have held that the issue of reliance is one of fact. *See, e.g., La Trattoria, Inc. v. Lansford (In re Lansford)*, 822 F.2d 902, 904 (9th Cir.1987).

Thus, the bankruptcy court's determination as to the lack of evidence of actual and

1. Mrs. Ruwart has been dismissed from this action.

reasonable reliance should be judged under the clearly erroneous standard. To reverse the bankruptcy court under this standard, one must conclude that the bankruptcy court's ruling "is without factual support in the record" or "be left with the definite and firm conviction that a mistake has been made." *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Even so, the creditors contend as well that the court's findings were clearly erroneous.

**B. Actual and Reasonable Reliance.**

■ Section 523(a)(2)(B) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . . .

11 U.S.C. § 523(a)(2)(B). Hence, to establish a claim under § 523(a)(2)(B), the creditor must prove that the debt was obtained by the use of a statement in writing (1) that is materially false, (2) respecting the debtor's or an insider's financial condition, (3) on which the creditor reasonably relied, (4) that the debtor made with the intent to deceive. *See In re Bonnett*, 895 F.2d 1155, 1156 (7th Cir.1989). The creditor objecting to the discharge has the burden of proof as to these elements, which must be established by clear and convincing evidence. *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986).

■ Despite Chrysler and American Motors attempt to reargue that their actions in extending the lines of credit were reasonable, the question in this case is whether there is factual support in the record for the bankruptcy court's determination that the creditors had not actually or reasonably relied on the Ruwart's financial statement in making the loans, not whether their decision to extend credit in the first instance was reasonable. The record demonstrates that such a factual basis exists.

First, there is little evidence that either creditor actually relied on the financial information contained in the statements in extending credit. Chrysler was the first creditor to undertake a financial analysis of Mr. Ruwart. Mr. Ruwart submitted his credit request in February, 1984. Based on his financial statement, Chrysler preliminarily determined that Mr. Ruwart would need to invest an additional $328,000 in the rental business to support the line of credit. Mr. Ruwart indicated that he would be unable to make this investment, but that he might be able to do so in the near future. Mr. Ruwart withdrew his credit application, however, as he sought to obtain credit through another lender. When that request was later declined, Ruwart reactivated his application with Chrysler.

Upon reconsideration of his application, the local office of Chrysler again recommended that it be conditioned on the additional infusion of $328,000 into the business. When Chrysler's local office sent their analysis of Ruwart's application to the area office for approval, the application was approved without the contingency that Mr. Ruwart invest the additional funds. Chrysler's guidelines for the approval of applications for lines of credit indicate that such an investment was necessary to meet debt to equity ratios to support the loan.

This sequence of events indicates that the financial statements were not a material factor in Chrysler's decision to extend credit to the leasing company. Instead, the

evidence reflects that the primary inducement to Chrysler was Mr. Ruwart's experience in the automobile leasing business, the value of the Thrifty franchise, Mr. Ruwart's prior satisfactory relationships with similar lenders, and the prospect that the delivery of a number of vehicles from another supplier would generate additional revenue for the leasing company.

■ While the financial statements were a necessary part of the loan application process, they were relatively inconsequential in the final decision to approve Mr. Ruwart for the loan. Although even partial reliance on the debtor's financial statements can support a creditor's claim under § 523(a)(2)(B), when a decision to make a loan is based upon certain statements that are true and certain statements that are materially false, the creditor must demonstrate actual and reasonable reliance as to the false statements. *See Monroe Indus. Bank v. Wolf (In re Wolf)*, 67 B.R. 844, 850 (Bankr.D.Colo.1986); *Citizens Bank & Trust Co. v. Whitehouse (In re Whitehouse)*, 26 B.R. 239 (Bankr.W.D.Ky.1982).[2] In this case, accepting that there were some discrepancies in the value of the Ruwarts' interests in certain partnerships and the liabilities against those interests,[3] Chrysler did not demonstrate that these discrepancies were material to its decision to extend the line of credit.

American Motors actually relied on the financial statement even less. While the record as to American Motors is incomplete,[4] there was little, if any, evidence to show that American undertook any independent investigation of Ruwart other than to contact Chrysler. One American Mo-

tors' financial analyst apparently never even reviewed the statement. American Motors appears to have relied almost entirely on the fact that Chrysler made a loan to Mr. Ruwart in deciding to extend credit to him. Thus, the bankruptcy court's finding that American Motors did not actually rely on the financial statement was not clearly erroneous.

Even if it could be concluded that the creditors actually relied on the financial statements, there is factual support for the bankruptcy court's conclusion that their reliance was not reasonable. The financial statement was on a Mountain States Bank form, and not a Chrysler or American Motors form. It was dated November 30, 1983 and was several months old when submitted. Several portions of the form were left blank. The form submitted to American Motors by Mr. Ruwart's accountant was not even signed. Although Chrysler did contact financial institutions with which Ruwart had established a relationship, it did not independently verify information provided by Mr. Ruwart's CPA. Nor did Chrysler question Mr. Ruwart's representations as to net worth, even though he stated that he was not able to come up with a $328,000 cash infusion.

■ While Chrysler attempts to provide an explanation for its decision to extend the credit, it has not met its burden of proof in this action. A creditor must establish by clear and convincing evidence that it relied on the false financial statements and that its reliance was reasonable. *See Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986). Where the evi-

---

**2.** The relationship between the false information and the creditor's decision to extend credit has been stated differently. Some courts have formulated a "but for" test—i.e., but for the false statements the creditor would not have entered into the transaction. *See Landmark Leasing, Inc. v. Martz (In re Martz)*, 88 B.R. 663, 671 (Bankr.E.D.Pa.1988). Others have required that the falsehood be of the type which would normally affect the decision to grant credit. *Heinold Commodities & Secs., Inc. v. Hunt (In re Hunt)*, 30 B.R. 425, 440 (M.D.Tenn.1983); *Green River Prod. Credit Ass'n v. Bridges (In re Bridges)*, 51 B.R. 85, 88 n. 7 (Bankr.W.D.Ky.1985).

**3.** Despite Chrysler's claim that Mr. Ruwart's failure to disclose certain guarantees and other obligations affecting the value of his assets, Chrysler's witnesses testified that they assumed that these were net values and that other liabilities could exist.

**4.** Evidently, there was a malfunction in the electronic recording equipment during the testimony of American Motors' witnesses, so much of the testimony is unavailable. However, both parties and the court have recounted some of the testimony, and there is no dispute as to what that testimony was.

dence presented by each side is of equal weight and credibility, the debt must be discharged. *See Webster City Prod. Credit Ass'n v. Simpson (In re Simpson)*, 29 B.R. 202, 212 (Bankr.N.D.Iowa 1983). Here the balance of the evidence tipped in favor of Mr. Ruwart, even though the directed verdict was granted before he presented his case.[5] Thus, IT IS ORDERED that the bankruptcy court's decision granting a directed verdict against Chrysler and American Motors in their § 523(a)(2)(B) action is affirmed.

---

**5.** Mr. Ruwart testified as an adverse witness during the creditors' presentation of their case.