In re Billy Raymond LaROCCA, and Vicky Clements LaRocca, Debtors.

CALCASIEU MARINE NATIONAL BANK, Plaintiff,

v.

Billy Raymond LaROCCA, and Vicky Clements LaRocca, Defendants.

Bankruptcy No. 480–0096–LC.
Adv. No. 480–0024–LC.

United States Bankruptcy Court,
W. D. Louisiana,
Lake Charles Division.

June 16, 1981.

J. A. Delafield, Lake Charles, La., for Calcasieu Marine National Bank.

A. J. Fazzio, Lake Charles, La., for debtors, Billy Raymond LaRocca and Vicky Clements LaRocca.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This cause came for trial on January 8, 1981 upon a complaint to determine the dischargeability of a debt filed by Calcasieu Marine National Bank, the plaintiff herein.

## STATEMENT OF THE FACTS

This matter arises upon a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. 523(a)(2)(B) of the Bankruptcy Code which excepts from discharge any debt for obtaining money, property or services or an extension or refinance of credit by the use of a statement in writing, that is materially false, concerning the debtors financial condition, on which the creditor reasonably relied and the debtor made with the intent to deceive. Testimony at the hearing indicates that Mr. LaRocca, on July 12, 1979 completed a loan application form at the main office of the Calcasieu Marine National Bank for $2,000.00. This loan application was filled out by Mr. LaRocca, himself, in the office of Mr. Dominigue, the loan officer, at the main office of the bank. After Mr. LaRocca filled out the application, Mr. Dominigue noted that there were no real estate assets nor rent payments indicated. Mr. Dominigue requested information on the debt structure of Mr. LaRocca's home and indicated a $28,000.00 debt to First Federal Savings & Loan on the reverse of Mr. LaRocca's loan application. On the loan application Mr. LaRocca disclosed the following debts:

Sears—$1,700.00, monthly installment—$70.00

Bank Americard—$1,200.00, monthly installment—$60.00

Bealls—$60.00, monthly installment—$10.00

When the above debts were added to the debt to First Federal Savings & Loan, which had a monthly installment of $300.00, this made a total monthly obligation $440.00. Unbeknown to Mr. Dominigue, Mr. LaRocca also had outstanding the following debts at the time he made the loan application to Calcasieu Marine:

Gulf National Bank—$4,465.00

Dial Finance—$3,000.00

C.I.T. Finance—$1,743.00

Calcasieu Teachers Credit Union—$3,900.00

Gulf National Bank—$1,070.00

First National Bank—$4,293.00

First National Bank—$2,600.00

Mr. Dominigue contends that had he known the true financial condition of Mr. LaRocca he would not have made the $2,000.00 loan to Mr. LaRocca.

Mr. LaRocca applied for a renewal of the $2,000.00 loan on October 10, 1979. At that time no additional credit information was requested of Mr. LaRocca. Neither at the time of the initial loan, nor at the time of the renewal did Mr. Dominigue make any effort to ascertain the correctness of the credit information he obtained from Mr. LaRocca.

On October 19, 1979 Mr. LaRocca filed another credit application at the Calcasieu Marine National Bank. This loan application was made at the Iowa Branch of the bank through Mr. Monceaux, a loan officer for the bank. In this application, Mr. LaRocca disclosed the following debts:

Sears—$1,300.00, $60.00 monthly

Visa—$1,300.00, $60.00 monthly

Bealls—$100.00, $15.00 monthly

Calcasieu Marine, $2,000.00

This loan was made for $900.00, which was renegotiated on December 10, 1979 with an increase of $400.00. No other debts were disclosed. The loan officer contends that had he known the true condition of Mr. LaRocca's finances he would not have approved the loan to him. Mr. Monceaux did not make any attempts to verify the indebtedness of Mr. LaRocca from the main branch or from any other source.

In 90 days, when the $900.00 debt became due, Mr. LaRocca requested a renewal with an additional $400.00. At the time of the renewal no additional debts were disclosed by Mr. LaRocca. Mr. Monceaux did not request any updating of the credit information obtained at the time the initial loan was made.

## CONCLUSIONS OF LAW

Under the Bankruptcy Code 11 U.S.C. 727 the court is required to grant a discharge unless one of the conditions of section 727 are met. Individual debts are not discharged when they meet the enumerated exceptions to discharge listed under Bankruptcy Code 11 U.S.C. 523. One of the enumerated exceptions makes nondischargeable a debt which was incurred by the use of a false financial statement in writing. This exception is contained in 11 U.S.C. 523(a)(2)(B), which reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt—

(2) for obtaining money, property, services, or an extension or renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

In the much cited case of *In re Taylor*, 514 F.2d 1370, 9 Cir. (1975), the court stressed the necessity of a strict construction governing this as well as all exceptions to the Bankruptcy Code.

This section has traditionally been subject to the same rule of strict literal construction governing all other exceptions to the Bankruptcy Act. Courts have consistently held that in order for

Section 17(a)(2) to bar a discharge, the party alleging fraud must prove actual or positive fraud, not merely fraud implied in law. This fraud is the type involving moral turpitude or intentional wrong, and there can be no mere imputation of bad faith.

■ The present provision, 11 U.S.C. 523(a)(2)(B), is modified only slightly and is intended to codify present case law. H.Rept.No. 95–959, 95th Cong., 1 Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1887). In addition to actual fraud, to qualify under 11 U.S.C. 523(a)(2)(B) there must be a false financial statement in writing, respecting the debtor's financial condition, on which the creditor reasonably relied and that the debtor made or published with the requisite intent to deceive. H.Rept.No. 95–989, 95th Cong., 2nd Sess. (1978).

The burden is upon the creditor to prove each of these five elements in order to prevail under section 523(a)(2)(B). In the instant case each of these requisite elements will be discussed separately.

■ For each of the loans in question, the debtor in applying for the loans filled out the loan applications himself, in the presence of one of the plaintiff's loan officers. This loan application constituted the use of a statement in writing that concerned the debtor's financial condition. In the case of *In re Nelson*, 561 F.2d 1342, 1343, 9 Cir. (1977), the debtor submitted a loan application to his creditor. In the *Nelson* case the loan application filled out by the debtor was found to satisfy the requirement of a statement in writing concerning the debtor's financial condition. Colliers on Bankruptcy notes:

> To come within the exception of section 523(a)(2)(B), the statement, to be in writing, must either have been written by the debtor, signed by the debtor, or the particular writing must have been adopted and used by the debtor. 3 *Coll. on Bankruptcy* 523.09.

■ The financial statement submitted by the debtor must have been materially false. The omission, concealment, or understatement or liabilities have been found to constitute a materially false statement. *In re Nelson*, supra, *In re Taylor*, supra, *Danns v. Household Finance Corp.*, 558 F.2d 114, 2 Cir. (1977). Here the debtor listed some of his liabilities but did not list a very large portion of his current outstanding debts. The omission by Mr. LaRocca clearly falls within present interpretation of 523(a)(2)(B), a material falsity.

■ The creditor to whom the debtor is liable for obtaining the money, property, services or credit must have reasonably relied on the false financial statement submitted by the debtor. The loan officers for each of the debts concerned testified under oath that if they had known the true nature of the debtor's financial condition they would not have approved the loan to the debtor. The court in the case of *In re Siegel*, D.C., 159 F.Supp. 704 (1958), found that where a loan officer, who did not pass on the loan, had stated that the credit committee which did pass upon the loan would not have granted it if they knew the application to be false, material reliance was established. The question of whether the reliance was reasonable is also clear. The debtor did not give the creditor any reason to suspect he was being untrue or incomplete in his application. It would have been difficult if not impossible for the creditor to find out about the loans that the debtor did not disclose.

■ The last element necessary is the intent to deceive. The debtor knew his financial condition. The debtor is a fairly well educated man working for the Calcasieu Parish School Board as a high school coach. It is also evident that he knew his current income was already insufficient to pay his current debts. He also knew that he could not have gotten the loans if he had disclosed his true financial picture. Mr. LaRocca was a personal friend of the two loan officers and they would not have had any reason to suspect he was being untruthful. Given the above facts, his intentional

exclusion of these loans from the list was for the purpose of obtaining loans he would not have otherwise gotten. The conclusion that the debtor had an intent to deceive is inevitable.

The debtor asserts that in his renewal of the loans no additional credit information was requested. This does not alter the result. The debts which were not listed were outstanding at the time he first obtained the loans and did not arise between the initial loan and the renewals. The lapse of time between the loans and the renewals does not negative the reliance. *In re Simon Weltman & Co.*, 2 F.2d 759, 2 Cir. (1924).

It is the finding of this court that the debts owed to Calcasieu Marine National Bank by Mr. LaRocca fit the nondischargeability provision of 11 U.S.C. 523(a)(2)(B) and these debts are thus declared nondischargeable.

Judgment in accordance with the above will be signed upon submission.