In re Mary Louisa BIEDENHARN a/k/a Louisa Biedenharn, Louisa Biedenharn Clausen, Mary Louisa Biedenharn Clausen, Debtor.

TOWN NORTH NATIONAL BANK OF LONGVIEW, TEXAS, Plaintiff,

v.

Mary Louisa BIEDENHARN a/k/a Louisa Biedenharn, Louisa Biedenharn Clausen and Mary Louisa Biedenharn Clausen, Defendant.

Bankruptcy No. 582–01106–S.
Adv. No. 582–0281.

United States Bankruptcy Court,
W.D. Louisiana,
Shreveport Division.

June 2, 1983.

---

Jerry S. Harris and Suzana Booth, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, Tex., for plaintiff.

David R. Taggart and M. Gail Bowen, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., for defendant.

LeROY SMALLENBERGER, Bankruptcy Judge.

### Findings of Fact

Louisa Health & Beauty Resort, Inc., (Resort), sought relief under Chapter 7. Its sole and only shareholder, Louisa Biedenharn, debtor and defendant herein, has also filed for bankruptcy under Chapter 7.

Town North National Bank of Longview, Texas, (Town North), plaintiff herein, has objected to the discharge of the debtor resulting in this adversary proceeding. The grounds for Town North's objection are found at 11 U.S.C. § 523(a)(2)(B). Biedenharn was granted a discharge on February 8, 1983 but the discharge was granted subject to the outcome of this hearing.

Prior to July 28, 1981, Jim Young, vice-president of the spa, inquired of Bruce Morris, president of Town North, about obtaining credit on behalf of the Resort. Young was informed that collateral would be required and the accounts receivable would not suffice. Town North wanted the personal guarantee of Biedenharn. The court is well aware of the successful reputation held by the Biedenharn family in the business world.

Young returned to Town North on July 28, 1981 with the personal guarantee of Biedenharn. This document ("Guaranty") was dated July 28, 1981 and was signed by Biedenharn. Exhibit P–3. Young presented Town North with the "Corporate Authorization Resolution" dated July 13, 1981. Exhibit P–2. This was signed by Biedenharn as president and it empowered Young as vice-president to borrow money. Young also gave Town North a copy of the corporate financial statements and balance sheet. Exhibit P–5. This was dated May 31, 1981. Also submitted to the bank was a copy of Biedenharn's personal financial statements and balance sheet dated May 31, 1981. Exhibit P–4. This paper bears a facsimile signature stamp.

Subsequently it was discovered that Young had embezzled corporate funds. He has since disappeared. David and Rita Brown were called in by Biedenharn to study the corporate situation.

On July 28, 1981, Young had secured credit from Town North in the amount of $75,000.00. The loan was represented by a promissory note that was now in default. On November 13, 1981, Biedenharn and the Browns met with Morris of the bank and discussed renewal of the loan. The loan was renewed for six months. Exhibit P–8.

At the November meeting, Biedenharn presented the bank her personal financial statements and balance sheet dated May 31, 1981 and bearing her own signature. Exhibit P–9. This statement is identical in every way to the statement presented Town North by Young marked as Exhibit P–4.

The financial statements and balance sheet of Biedenharn show her as owning shares of stock in several Coca-Cola Bottling Companies and various banks. The statements do not reflect any liabilities encumbering the shares of stock. However, mortgages on real estate and a mobile home are noted. In fact, and the parties so stipulate, these shares have been pledged to other creditors since before May 31, 1981 and have so remained pledged as of the date of renewing the loan. Exhibit P–11.

### Conclusions of Law

11 U.S.C. § 523(a)(2)(B) states:

"(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

\*    \*    \*    \*    \*    \*

"(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

\*    \*    \*    \*    \*    \*

"(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied;  and

(iv) that the debtor caused to be made or published with intent to deceive:"

■ The burden rests upon the creditor to prove each of the five elements by the clear and convincing evidence. In this case there is a statement in writing respecting the debtor's financial condition.

■ Failure to list the pledge of stock on the financial statements and balance sheet is a material falsehood. A material falsehood is a substantial or important untruth. *In re Tomeo*, 1 B.R. 673 (Bkrtcy.E. D.Pa.1979). What is substantial is a question of fact. *In re Rodriguez*, 29 B.R. 537 BLD ¶ 69,162 (Bkrtcy.E.D.N.Y.1983). The value of property as security for an indebtedness is materially diminished if that property has a prior and superior ranking lien upon it. Biedenharn listed as the value of the stock the sum of $1,991,866.18. That is the value represented to Town North but that is not the true value as to Town North because of the pledges. Failure to divulge the true ownership interest in certain assets was found to be materially false. *Matter of Rickey*, 8 B.R. 860, BLD ¶ 67,866 (Bkrtcy.M. D.Fla.1981). Surely the failure to divulge the true value of assets as security is a material falsehood. The *Tomeo* court found the mistatement of the value of assets to be a material falsehood.

The next issue may be phrased: Did the bank rely on the financial statements and balance sheets presented by Young and later by Biedenharn and was that reliance reasonable though the bank did not inquire of the debtor as to liens on the stock and did not check on the veracity of the statements.

This court finds as fact that the bank did rely on those statements and would not have loaned the money had it known of the pledged stock. Another court reached this conclusion under similar facts. See *In re Rodriguez.*

■ A creditor has a right to assume the correctness of statements and information supplied by the debtor. *Matter of Rickey.* There were no other facts present that would put the reasonable creditor on notice that some or all of the information was false. Town North's reliance was reasonable under these circumstances. The business success of the Biedenharn family is well established in this area of the nation. Town North's president testified that only the debtor's personal guarantee would be required as collateral for the loan. The bank looked only to the financial statements and balance sheets and the debtor's personal reputation to assess her worthiness as a credit risk. Tr. pp. 72–73, 02/08/83. Another court within this district confronted facts similar to those found here and reached the same conclusion. The reliance was reasonable. *In re LaRocca*, 12 B.R. 56, BLD ¶ 68,085 (Bkrtcy.W.D.La.1981).

The financial statements and balance sheets marked as Exhibits P–4 and P–9 were made or published by the debtor. It is true that the first statement (Exhibit P–4) bore only a facsimile signature and was supplied by Young at the July meeting with Morris. However, the facts show that the loan was legitimately obtained with the consent of the debtor. The corporate resolution authorized Young to borrow money and was signed by Biedenharn. The personal guaranty was signed by the debtor and was dated as the same day of the loan.

Biedenharn claims that she was deceived by Young and was not cognizant of her actions. The debtor is a well known businesswoman. She has had two years of college. She has been involved in other business ventures and has had other business experience. When testifying, Biedenharn was asked to define a promissory note, a lien and a personal guaranty. Her replies indicate to the court that she was knowledgeable about the transactions and what information would be required by the bank.

■ Young was an agent of the spa. He also possessed apparent authority conferred by Biedenharn personally. The debtor was the sole shareholder of the spa and acted as president of the corporation. It was Biedenharn who signed the resolution authorizing Young to act for the spa. Young delivered documents bearing the debtor's signa-

ture. The law is well settled that the principal is responsible for the acts of her agent.

At a later time the Browns and Biedenharn met with Morris to discuss extending the loan. This time Biedenharn represented herself and she discussed her personal guaranty with Morris. At this meeting Biedenharn supplied Town North with the identical statements and balance sheet as those supplied by Young at the July meeting. This time the papers bore her signature. Exhibit P–9.

At the very least, Biedenharn acted with such reckless disregard as to be the equivalent of intent to defraud. Biedenharn knew or should have known of the contents of those papers signed by her and later given to Town North by Young. Subsequently, Biedenharn would supply Town North with those very same documents, signed by her, containing the very same material falsehoods. *In re Anderson,* 10 B.R. 607 (Bkrtcy.S.D.Fla.1981). See also *Rodriguez.*

■ Intent to defraud a creditor may be inferred from the facts. Silence or concealment as to a material fact can constitute a false pretense or a false representation as surely as an overt act. *In re Quintana,* 4 B.R. 508, 6 B.C.D. 464, 2 C.B.C. 2nd 293 (Bkrtcy.S.D.Fla.1981). In hopes of obtaining a loan and later, in hopes of renewing or extending that loan, Biedenharn distributed to Town North her personal financial statements and balance sheet which she knew to be materially false. At the time she knew that Town North was relying solely on her personal finances as collateral for the loan. Biedenharn had to know the significance of the pledges encumbering her stock.

The debtor's discharge pursuant to 11 U.S.C. § 727 is denied as to the debt owed Town North National Bank of Longview, Texas. As to the extent said discharge may have been granted on February 8, 1983, such discharge is revoked, rescinded and annulled as to Town North National Bank. 11 U.S.C. § 523(a)(2)(B).