In re Stuart R. DENENBERG, Debtor.

MERCHANTS NATIONAL
BANK, Plaintiff,

v.

Stuart R. DENENBERG, Defendant.

Bankruptcy No. 81–00424–JG.
Adv. No. A81–0348.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 28, 1983.

---

George R. Desmond, Framingham, Mass., for debtor/defendant.

John Gazourian, Leominster, Mass., for plaintiff.

## MEMORANDUM ON
## NON–DISCHARGEABILITY

JAMES N. GABRIEL, Bankruptcy Judge.

The debtor, Stuart R. Denenberg ("Denenberg") filed a voluntary Chapter 7 Petition on March 16, 1981. The debtor listed the Plaintiff, Merchants National Bank ("Merchants"), as a creditor on his Schedule of Liabilities in the amount of $25,000.

In this adversary proceeding, the Plaintiff seeks a determination that the debt of $34,089.88 owed it by the debtor by reason of a default judgment obtained against Denenberg is non-dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B) on the ground that the debtor obtained two loans on the basis of a false financial statement. The debtor's Answer denied that the financial statement was false and asserted that the Plaintiff did not rely on the financial statement. A trial was held on July 1, 1982. Based upon the documentary evidence, the testimony of two bank officers and the debtor, the Court finds the following facts as required by Bankruptcy Rule 7052.

In August 1979 Stuart Denenberg, Marvin Sampson, and Herbert Diamond intended to form a partnership, "Dedisa Associates", for the purpose of dealing in art objects. Denenberg, a Bowdoin College graduate, was in the business of art dealing and appraisal. Diamond, a regular and a substantial customer of Merchants Bank, arranged a meeting with the bank and on August 9, 1983 the trio met with Deane Foster, a Vice-President and John Piekson, President. Both Denenberg and Sampson each sought a loan of $15,000. Denenberg took a loan application form. Foster instructed him to complete it and return it with a financial statement of assets and liabilities. On August 16, 1979 a second meeting was held at which time Denenberg submitted to Piekson a financial statement signed by him dated July 31, 1979. The financial statement reports Denenberg's net worth to be $335,320. It contains one cate-

gory of liabilities in the amount of $2500. Listed as assets were: cash on hand—$2500; accounts receivable—$3,000; notes receivable—$15,120; art collection—$100,000; general investments—$171,500; and, furnishings and antiques—$45,700.

Denenberg prepared the financial statement. He admitted at trial that several of the listed amounts were inaccurate. He testified that the $15,000 value attributed to notes receivable did not in fact represent loans, a change from his testimony given in a deposition. At trial he stated that the amount represented gifts and advances to his roommate and were not debts owed him by his friend. There was no documentation evidencing the advances. I find that the debtor should not have listed this amount as an asset on his financial statement.

Denenberg testified that in the financial statement he correctly valued his art collection at $100,000. It is undisputed, however, that he sold the art collection, together with the antiques and furnishings he listed as worth $45,000, to his father in March 1980 for $30,000. There was no evidence presented at trial as to the actual value of these categories on the date of the financial statement.

In the financial statement, Denenberg attributed a $171,500 value to "General Investments", consisting of his interest in four businesses and the value of a leasehold interest in real estate worth $30,000. At the outset, none of his investments were represented by shares of stock. Denenberg testified that one of the general investments consisted of a $2,000 to $3,000 investment in Life Time Group, a limited partnership with his mother and another person, which owned no assets. He had also invested $2,000 to $3,000 in Mega Corporation, a sole proprietorship. He further explained that a portion of the $171,500 in general investments was attributable to his investment at $15,000 in time and effort, not money, in a corporation, Denenberg Fine Arts, Inc. The debtor listed his interest in this corporation as $1100 in his Schedule of Assets dated March 16, 1981. The final investment Denenberg listed in the finan-

cial statement was his interest in Poets Commemorative, Inc., a now defunct company, which at the time Denenberg executed the financial statement was being sued for $25,000. At trial Denenberg explained he did not understand the meaning of the terms notes receivable or general investments. He alone, however, prepared the financial statement, established the asset categories, and estimated the value of each asset. After listening to the debtor's testimony and observing the witness I find that the amount the debtor attributed to the value of his general investments wholly incredible and unjustifiable.

On August 16, 1979 Denenberg brought the financial statement to the bank, which approved a loan of $15,000. Prior to approving the loan the bank contacted Dunn & Bradstreet for a credit assessment, but for an unknown reason the check was not completed. The bank officer did not ask Denenberg for an analysis of his valuations. He explained at trial that he felt such an analysis was unnecessary because Denenberg was referred by Diamond. Denenberg executed a note for $15,000 on that date. The bank advanced him $5,000 on August 16, 1979, $5,000 on September 4, 1979, and $5,000 on October 4, 1979. According to the bank officer, security for the loan was not considered because of Denenberg's substantial net worth. Exhibit 4, the bank's internal loan memorandum states the purpose of the loan as "business ventures with Herb Diamond and Marvin Sampson" and the basis for approval as "7/31/79 statement of N.W.", which refers to net worth.

On November 9, 1979, the loan was rewritten for a total amount of $25,000 and Denenberg executed a new demand note. Denenberg gave no new financial information at this time and the internal loan memorandum and bank officer's testimony indicate that the debtor's net worth was the basis for granting the renewal. There was no evidence that Denenberg's financial condition changed from August 1979 to November 1979.

Denenberg defaulted on the note and the bank recovered a default judgment in Leominster District Court for $34,089.88.

Section 523(a)(2)(B) excepts from discharge "any debt ... or refinance of credit, by—(B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive; ..."

In this case, there is no dispute that the statement submitted by Denenberg was in writing, was signed and used by him, and related to his financial condition.

The issues presented are whether the financial statement was materially false, whether the statement was made with intent to deceive, and whether the Plaintiff Bank reasonably relied on the financial statement in extending credit to Denenberg. The Court will examine each issue separately.

## MATERIAL FALSITY

■ An incorrect or erroneous financial statement is not necessarily materially false. *L. King, Collier on Bankruptcy,* Par. 523–09, at 523–52 (15th ed. Supp.1982). A materially false statement is one which paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit. *In Re Hunt,* 30 B.R. 425, 440 (Bkrtcy.M.D.Tenn. 1983). The question of materiality should be judged not on the basis of the size or seriousness or the error, but by a comparison of the debtor's actual financial condition with the picture he paints of it. *In Re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.1982). A financial statement which markedly overstates the value of a person's assets, so as to distort his financial picture must be considered materially false. *In Re Hunt,* 30 B.R. 425 (Bkrtcy.M.D.Tenn.1983); *In Re Tomeo,* 1 B.R. 673 (Bkrtcy.E.D.Penn.1979).

■ Denenberg's financial statement was materially false. He listed the value of notes receivable as $15,120 when in fact such a debt was not owed to him; the amount of this item had actually been a series of gifts over several years to his roommate. There was no written promissory note or oral obligation to repay. The statement that Denenberg's "General Investments" had a value of $171,500 was clearly false. Even accepting his testimony, he had only invested a total of $21,000 in three businesses. Moreover, the actual value of the companies did not approach the stated value. One was defunct at the time he submitted the financial statement, and another was being sued for $25,000. These false valuations are material as they caused a great discrepancy between the debtor's actual net worth and because the value of assets is typically important and necessary information used by a lender in deciding to extend credit.

## INTENT TO DECEIVE

■ Intent to deceive may be inferred where the debtor knew or should have known of the falsity of his statement. *In Re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass. 1982). Here, I am persuaded that the debtor knew that he was misrepresenting the value of certain assets. His assertion that he did not know the meaning of the terms "notes receivable" and "General Investments" is wholly incredible. Not only is he a college graduate, with extensive business experience, he prepared the financial statement for submission to the bank. The debtor's statement of the value of his assets was so far-fetched, it was attributable to intentional deceit.

## RELIANCE

■ The Plaintiff must show it actually relied on the false financial statement and that its reliance was reasonable. *L. King, 3 Collier on Bankruptcy,* Par. 523.09, at 523–11 (15th ed. Supp.1982).

■ The Court is convinced that the bank based its decisions to loan Denenberg $15,000 and to refinance and increase this

loan on his false financial statement. In the first place, the bank refused to approve the initial loan until Denenberg submitted a written financial statement. Its internal memoranda in the case of the first loan and the refinancing transaction three months later state that Denenberg's net worth was the basis for approval of both loans. Moreover, both bank officers testified that Denenberg's written representation of his net worth—$335,000—was the controlling factor in their decision to approve the loan.

The bank also actually relied on the false financial statement in the extending of the second loan. The lapse of time between loans does not negate reliance. *In Re La Rocca,* 12 B.R. 56 (Bkrtcy.W.D.La. 1980). Where the renewal is granted with reference only to the financial statement and is not based on other factors, a finding of reliance is warranted. *L. King, 3 Collier on Bankruptcy,* Par. 523.10 at 523–66.1, (15th ed. Supp.1982). Here, the refinancing was accomplished within a short time after the original loan. The debtor presented no other facts to the bank to supplement its information on his credit worthiness and he had not yet begun to repay the first loan. Therefore, I find that the decision to refinance was based on the financial statement.

The reasonableness of the bank's reliance must be determined by comparing the bank's actual conduct with its normal business practice, the standards and custom in the industry, and the particular circumstances concerning the loan application. *In Re Patch* 24 B.R. 563 (D.C.D.N.D. 1982). To sustain its burden of demonstrating reasonableness a lender must show it exercised ordinary diligence with respect to the loan. A lender's failure to question an applicant concerning a financial statement does not always preclude a finding of reasonable reliance. Although the Court is aware that many decisions have refused to find reliance reasonable where the lender accepts the financial statement at face value without investigating its accuracy, a review of these decisions reveals that in each instance the lender had reason to know or suspect that the financial statement was inaccurate or incomplete. *See, e.g., In Re Tashman,* 21 B.R. 738 (Bkrtcy.D.Vt.1982); *In Re Montbleau,* 13 B.R. 49 (Bkrtcy.D. Mass.1981); *In Re West,* 21 B.R. 872 (Bkrtcy.D.Mass.1980). Where a bank has no reasonable cause to believe a debtor's estimates of the value of assets is inaccurate, it cannot be considered negligent in accepting those valuations. *Matter of Rickey,* 8 B.R. 860, 863 (Bkrtcy.M.D.Fla.1980). In circumstances where a bank has actual knowledge of the applicant's good business reputation, its reliance may be considered reasonable despite the lack of independent inquiry into the financial statement, as long as the financial statement does not disclose facts that would put a reasonable creditor on notice that it should inquire further. *In Re Biedenharn,* 30 B.R. 342, 345 (Bkrtcy.W. D.La.1983).

In the present case the Court is satisfied from the totality of the evidence that the bank's reliance was reasonable. The bank was justified in accepting the values stated by Denenberg. It had no reasonable cause to believe and nothing was brought to its attention that the valuations were suspect. Denenberg's trustworthiness was accepted based on reference by a substantial bank customer. This cannot be considered unreasonable. Moreover such a conclusion is consistent with the custom in the industry. Banks do not generally send appraisers to check the accuracy of values of personalty stated in a financial statement. Accordingly I find that the bank reasonably relied on the false financial statement in granting the first loan, and the second loan.

For these reasons, the debt owed by the debtor to the Plaintiff is non-dischargeable, and Judgment shall enter for the Plaintiff in this adversary proceeding.