In re Leslie J. HERZOG, Jr., Debtor.

NORTHMARK BANK, Plaintiff,

v.

Leslie J. HERZOG, Jr., Defendant.

Bankruptcy No. 91–15952–WCH.

Adv. No. 91–1602.

United States Bankruptcy Court,
D. Massachusetts.

May 28, 1992.

Steven E. Boyce and Thomas O'Connor, Hale & Dorr, Boston, Mass., for plaintiff.

William Sopp and Eric Pyenson, Finnegan & Stanzler, Boston, Mass., for defendant.

MEMORANDUM DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

WILLIAM C. HILLMAN, Bankruptcy Judge.

Northmark Bank ("Bank") brought this action against the Debtor, Leslie J. Herzog,

Jr. ("Herzog") seeking a determination that certain debts due to it are nondischargeable under 11 U.S.C. 523(a)(2)(B). After a trial on the merits, the Court finds that the debts owed to the Bank are dischargeable.

### Findings of Fact

Herzog began his involvement in the real estate industry working as a construction worker and purchasing properties individually and through a partnership after he graduated from Winchester High School. In January of 1985, he and John Nelson formed the real estate partnership, Stratford Management Associates ("Stratford").

Stratford eventually acquired many pieces of real estate and corresponding liabilities. Herzog signed personal guarantees for many of the loans used to finance these acquisitions. In February of 1988, the partners began to quarrel and Nelson eventually sued Herzog in July of 1990. Pursuant to a stipulation, the partnership was dissolved and the lawsuit dismissed in December of 1990.

In June of 1988, Herzog decided to seek financing for certain commercial real estate ventures. Having conducted business with the Winchester Co-operative Bank ("Winchester") in the past he sought financing there. He was reminded, however, that Winchester did not engage in commercial lending. The president of Winchester referred Herzog to the president of the Bank.

Thereafter, Herzog met with the president of the Bank, Ms. Jane Walsh ("Walsh"). Based on a conversation between the two bank presidents, Walsh stated that she knew that Herzog was seeking financing to acquiring a commercial building in Winchester. There is some dispute as to when Herzog offered his personal financial statement at the initial meeting.

Walsh testified that the Bank's practice with respect to loans is to interview the client, review the credit analysis with the Credit Committee, make the loan decision, and then maintain business development contact. The Bank requires a financial statement and no other information when considering a commercial loan.

After receiving Herzog's first financial statement, which was dated April 1, 1988,

Walsh testified that she did not look into any references because Herzog had been referred by a bank president. The Bank did run a credit bureau check on Herzog which indicated a good credit history. The Bank made no other inquiries with respect to Herzog's financial condition.

On the first financial statement, Herzog represented that he was the sole title holder of several properties. In fact, he owned most of the properties with his wife. He also omitted the outstanding liabilities of Stratford for which he was liable. He determined his equity in Stratford by totaling the market value of the Stratford properties, subtracting the outstanding mortgages, and dividing the total by two. He made mathematical errors. He listed, without further elaboration, a salary of $100,000.00 and a real estate income of $50,000.00.

Beginning in September of 1988 and continuing through July of 1989 the Bank loaned Herzog approximately $2,000,000.00. Herzog used many of these loans to purchase income producing properties from Stratford. The Bank took first mortgages on these properties after receiving appraisals and income statements on each one. The unsecured loans were lines of credit. In September or October of 1989, Herzog began defaulting on his loans.

In November of 1989 the Bank and Herzog entered into discussions regarding the status of the loans. Herzog represented that he was attempting to liquidate his properties. The Bank required, and Herzog submitted, a second financial statement that had been prepared at that same time. This statement was as sparse as the first. After reviewing the second statement, however, the Bank agreed to forbear from taking any action against the properties. The Bank also extended the line of credit that it had approved in September of 1988 from $100,000.00 to $150,000.00. For this extension, the Bank took a first mortgage on a piece of land in Winchester and second mortgages on other pieces of property.

In October of 1990, Herzog sought to refinance his personal residence. Winchester agreed provided it retained its first position with respect to the total indebted-

ness. Before the refinancing, Winchester was owed $70,000.00. As part of the refinancing it loaned Herzog an additional $200,000.00.

The Bank agreed to subordinate to the refinanced amount but prior thereto required that Herzog give a third financial statement. Herzog provided a statement, similar to the others, giving his financial condition as of January of 1990. The Bank thereafter agreed to subordinate to Winchester.

For the subordination, the Bank received an interest in a $65,000.00 certificate of deposit that Herzog had established at the Bank and an interest in two Corvette automobiles worth a total of $100,000.00. At this time, the residence had an appraised value of $750,000.00.

In July of 1991, Herzog filed his bankruptcy petition.

### Discussion

For a debt to be deemed nondischargeable the moving party must show that the debt was:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property or services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. 11 U.S.C. § 523(a)(2)(B).

Materially False Statement Respecting Debtor's Financial Condition

■ A financial statement is materially false if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit ... A financial statement which markedly overstates the value of a person's assets, so as to distort his financial picture must be considered materially false." *Merchants Nat'l Bank v. Denenberg (In re Denenberg)*, 37 B.R. 267, 271 (Bankr.

D.Mass.1983). Both Herzog's enormous outstanding liabilities and the manner in which his properties were held were certainly items that would affect a decision whether to grant credit. The Court finds that the three financial statements were materially false.

### Reasonable Reliance

■ The Court considers the third element, reasonable reliance, to be the thorniest issue. There is no doubt, based upon Walsh's testimony, that the Bank, either in whole or in part, relied on the financial statements. The Court questions, however, whether such reliance was reasonable.

Courts in this district have held that such reliance may be determined by comparing a bank's regular practice with the industry standard and with that which occurred during the transaction in question. *Pacific Int'l Developers Corp., Ltd. v. Sullivan (In re Sullivan)*, 58 B.R. 692, 698 (Bank. D.Mass.1986). Walsh stated that the Bank's practice is to examine the financial statement and check references when considering a commercial loan. There was no testimony regarding industry standards. In this transaction the Bank received the financial statement but did not call any references.

■ The Bank argues that relying on the face value of the financial statement was reasonable because the statements were prepared by a sophisticated professional with a substantial amount of experience preparing statements. As such, it contends, Herzog is held to a higher standard. The testimony indicated that Mr. Herzog has a high school diploma and entered into real estate through his construction business and maintenance experience. He testified that he has prepared perhaps one dozen financial statements over a fifteen year period. The Court finds that even if the Bank were stating a correct proposition it is not applicable to this debtor.

■ The Court agrees that banks are not required to make affirmative inquiries upon receipt of a financial statement. *First Bank of Colorado Springs v. Mullet*

*(In re Mullet)*, 817 F.2d 677 (10th Cir.1987); *Merchants Nat'l Bank v. Denenberg (In re Denenberg), supra* at 272. When a bank, however, has no prior experience with a debtor and there are obvious "red flags" in a statement, a bank is considered to be acting unreasonably if it relies on the statement. *First Bank of Colorado Springs v. Mullet (In re Mullet), supra; Whitney Nat'l Bank v. Delano (In re Delano)*, 50 B.R. 613, 619 (Bank.D.Mass.1985).

In *Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221 (5th Cir.1991), the fifth circuit found that there was reasonable reliance notwithstanding the bank's unfamiliarity with the debtor, the lack of a credit report, and the debtor's accountant's disclaimer. The court found that the debtors were accompanied by a well known depositor, the credit reports in that particular state were not useful, and the accountant was a long time employee of the debtor. Lastly, the bank had contacted the debtors prior bank and also conducted lengthy discussions with the debtors concerning their statement and assets.

With respect to the first statement in this case, Walsh testified that the Bank had no prior lending experience with Herzog. Although referred by another bank president, Herzog did not approach the Bank with a sponsor. The Bank did not verify references. It ran a credit check which Walsh testified would only give information from the banks that use the service and would not reflect net worth. The Bank did not request any further information and did not discuss the statement with Herzog.

Walsh explained on cross examination that neither she nor another bank officer who reviewed the financial statement noticed that Herzog had deducted the amount of outstanding mortgages once from the market value of the properties and another time from the outstanding equity. Herzog listed a value for his 50% ownership interest in Stratford but gave no further explanation as to what the entity was or how he determined his more than $4,000,000.00 equity position. While the financial statement offered an annual income of $150,-000.00, it does not explain the source. It also lists a value of $150,000.00 for a "special collection" which is not explained.

Here there was no familiarity with Herzog and an abundance of "red flags" in the financial statement. Given these facts the Court finds that for reasonable reliance, even under the *Jordan* case, the Bank was required and did not make affirmative inquiries regarding the financial statement. Accordingly, there was no reasonable reliance on the first statement.

In the second statement, two of the properties that Herzog had listed in the first financial statement under Schedule C were no longer there. One had been moved to Schedule D and one was missing altogether. The interest in Stratford was deleted from Schedule C. The remaining balance from Schedule C was not transferred to the cover sheet of this financial statement. Additionally, the cash on hand had decreased from $525,000.00 to $200,000 while the mortgages had increased from $829,-500.00 to $4,548,000.00.

Herzog provided the second statement at a time when he requested that the Bank forbear from taking any action while he liquidated his assets. He was, therefore, in a different financial condition than he was at the time of the first statement. This information and the inconsistencies and significant changes in the statement, however, did not cause the Bank to investigate the statement. The Court finds that the failure to make further inquiries results in an unreasonable reliance on the second statement.

With respect to the third statement, the cash on hand had decreased to $50,000.00. All of the securities listed in the first two statements were omitted as were the cars, personal property, "special collection", and antique cars. The total for these items was considerable. In addition, the $50,-000.00 annual income from real estate was no longer listed. Schedule C was omitted entirely. After receiving the third statement, the Bank did not conduct a further investigation when one was warranted given the significant changes. Accordingly, the Court finds that there was no reasonable reliance on the third statement.

Having found no reasonable reliance, the Court will not address the issue of intent to deceive.

### Conclusions of Law

For the reasons set forth herein the Court concludes that the Bank failed to prove that it reasonably relied on the financial statements provided by Herzog. Absent such a finding, the debt Herzog owes to the Bank is dischargeable. The Court finds for the defendant Herzog.