**Anthony C. BYRD, Appellant,**

v.

**BANK OF MISSISSIPPI, Appellee.**

No. 3:94–cv–410 (Br)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 5, 1997.

Robert Charles Robb, Jackson, MS, for Anthony C. Byrd, Mary P. Byrd.

James P. Caldwell, Riley, Ford, Caldwell & Cork, Tupelo, MS, Elias Lake Tolbert, Riley, Ford, Caldwell & Cork, Jackson, MS, for Bank of Mississippi.

Robert Smith Murphree, Jackson, MS, Trustee.

Ronald H. McAlpin, Jackson, MS, Trustee.

## MEMORANDUM OPINION

BRAMLETTE, District Judge.

This cause is before the Court on appeal from a Memorandum Opinion and Judgment of the Bankruptcy Court for the Southern District of Mississippi, Jackson Division. Having carefully considered the briefs of appellant and appellee, as well as the record in

the bankruptcy court, the Court finds as follows:

Dr. Anthony C. Byrd filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. In response, the Bank of Mississippi commenced an adversary proceeding in order to have its claim arising out of a promissory note executed by the debtor declared nondischargeable under 11 U.S.C. § 523(a)(2)(B). After a trial of the matter, Judge Edward Ellington, Bankruptcy Judge, ruled in favor of the Bank of Mississippi and entered judgment. This appeal followed.

Jurisdiction over this appeal lies pursuant to 28 U.S.C. § 158(a). "Certainly, each adversary proceeding should be considered a separate judicial unit for purposes of determining finality, as should contested matters." 1 *Collier on Bankruptcy*, ¶ 3.03[6][b], 3–192 (15th Ed.1993); *see also Martin Brothers Toolmakers, Inc. v. Industrial Development Board*, 796 F.2d 1435, 1437–38 (11th Cir. 1986).

The applicable standard of review provides that the bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Bankruptcy Rule 8013;[1] *Matter of Jordan*, 927 F.2d 221, 223–24 (5th Cir.1991); *Matter of Luce*, 960 F.2d 1277, 1280 (5th Cir.1992). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

"The test for the district court … is not whether a different conclusion from the evidence would be appropriate but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *In re Country Junction Inc.*, 41 B.R. 425, 428 (W.D.Tex.1984), *quoting In re Bard-*

*well*, 610 F.2d 228, 230 (5th Cir.1980). The Supreme Court has clarified this standard:

This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently … If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently … Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).[2]

With regard to matters of law, the bankruptcy court's legal conclusions are reviewed *de novo*. *In re Fernandez*, 89 B.R. 601 (W.D.Tex.1988), *citing In re Missionary Baptist Foundation*, 796 F.2d 752, 756 (5th Cir.1986). The district court must "independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Matter of Hammons*, 614 F.2d 399, 403 (5th Cir.1980). Both the trial court's legal analysis of the inferences to be drawn from the facts and the ultimate conclusions of law are subject to plenary review.

Where there are mixed questions of law and fact, the factual premises are subject to the "clearly erroneous" standard and the legal conclusions are subject to *de novo* review. *Matter of Clark Pipe and Supply Co., Inc.*, 893 F.2d 693, 697 (5th Cir.1990). However, if a finding of fact is premised on an improper legal standard, or a proper one improperly applied, the finding loses the insulation of the clearly erroneous rule. *In re Missionary Baptist Foundation of America*, 712 F.2d 206, 209 (5th Cir.1983); *see also Bose Corp.*

---

**1.** "On an appeal the district court or bankruptcy appellate panel may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court

to judge the credibility of the witnesses." Bankruptcy Rule 8013.

**2.** Although *Anderson* concerned a federal appellate court's review of a district court decision, it is equally applicable to a review of a bankruptcy court's decision. *Matter of Webb*, 954 F.2d 1102, 1104 (5th Cir.1992).

*v. Consumers Union,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1959–60, 80 L.Ed.2d 502 (1984) (reviewing court is not bound by the "clearly erroneous" standard as to factual findings if the trial court based its findings of fact upon a misunderstanding of applicable legal principles).

Finally, evidentiary rulings are reviewed under an abuse of discretion standard. *In re Freytag,* 173 B.R. 330, 337–338 (N.D.Tex. 1994); *Miller v. Universal Studios, Inc.,* 650 F.2d 1365, 1374 (5th Cir.1981). A judgment may be reversed on the admission of improper evidence if the ruling constituted an abuse of discretion and the error was prejudicial.

Under the section of the Bankruptcy Code at issue here, an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . . ."

11 U.S.C. § 523(a)(2)(B).

■ To prevail on its claim of nondischargeability, the Bank of Mississippi was required to prove each of the following elements:

1. the existence of a statement in writing;

2. the writing must be materially false;

3. the writing must concern the debtor's financial condition;

4. the creditor must have reasonably relied on the statement; and

5. the statement must be made or published with the intent to deceive.

*First Interstate Bank of Nevada v. Greene (In re Greene),* 96 B.R. 279, 282 (9th Cir. BAP 1989).

The bankruptcy court found that Dr. Byrd approached the Bank of Mississippi to obtain an unsecured loan in the amount of $20,000 in January of 1990. Prior to this time, the bank had no relationship with Dr. Byrd in his individual capacity. The bank requested and received from Dr. Byrd a 1988 individual income tax return along with statements of financial condition as of June 30, 1989, prepared by Dr. Byrd's accountant. The bank also obtained a credit report on Dr. Byrd. After considering all the information in its possession, the bank granted Dr. Byrd the loan for $20,000. The promissory note was renewed in July of 1990, at which time the bank requested a current financial statement. Dr. Byrd provided a statement of financial condition as of December 31, 1989, prepared by his accountant. In January of 1991, the note was again renewed, pursuant to a financial statement as of August 31, 1990. This statement, which incorporates portions of the previous financial statements, was not signed by an accountant, but appears to have been partially prepared by Dr. Byrd. On July 19, 1991, Dr. Byrd executed a third renewal note in favor of the bank in the amount of $17,-748.17. To obtain the loan renewal, Dr. Byrd provided a financial statement as of December 31, 1990. This statement was prepared and signed by Dr. Byrd's accountant. The bank also obtained another credit report prior to renewing the loan. Dr. Byrd filed his bankruptcy petition on February 7, 1992.

The appellant asks this Court to reverse the following findings of the bankruptcy court:

(1) that the financial statements were materially false;

(2) that the Bank of Mississippi reasonably relied on the June 30, 1989, financial statement in making the loan in January of 1990;

(3) that said statement was made with the intent to deceive.

■ The bankruptcy court properly applied the preponderance of evidence standard on the nondischargeability issue. (Memorandum Opinion, p. 7); *see Grogan v. Garner,* 498 U.S. 279, 285–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The June 30, 1989, financial statement showed Dr. Byrd as having a net worth of approximately $649,000. Appearing on the financial statement was an asset consisting of 60 acres of real property in Smith County, Mississippi, with a value of

$30,000. At trial Dr. Byrd admitted that he did not, in fact, own the property. He explained that at the time the financial statement was prepared, he believed the land had become devised to him upon his father-in-law's death. Dr. Byrd admitted that he has never paid taxes on the property nor has he ever seen a tax bill for taxes due on the property. He testified that his brother-in-law farms the property, and he just assumed that his brother-in-law was paying the taxes.

The June 30, 1989 financial statement also listed as an asset a residence in Covington County, Mississippi, with an appraised value of $49,800. The debtor testified that at the time he executed the January 1990 note in favor of the Bank of Mississippi, he had sold the property to his brother on a conditional sales contract with a purchase price of $39,-000. He further testified that the property was encumbered with a deed of trust securing a note for $39,000 to the Bank of Simpson County. The financial statement mentioned neither the conditional sales contract nor the note and deed of trust. Dr. Byrd explained that his failure to list these items was an oversight.

Also appearing as an asset on the financial statement was a note receivable for approximately $103,000 from Southern Outdoors, Inc. The statement reflected that 92% of the stock in Southern Outdoors was owned by Dr. Byrd.

The credit report obtained by the bank at the time of the original loan did not reveal Dr. Byrd's debt to the Bank of Simpson County. At trial, the loan officer testified that in reading the credit report, nothing appeared to suggest that Dr. Byrd's financial statement was not correct.

The second financial statement, dated December 31, 1989, was provided to the bank in conjunction with the July 1990 renewal, and showed Dr. Byrd as having a net worth of approximately $629,000. It also listed as assets the 60 acres in Smith County, Mississippi, with a value of $30,000, the residence in Covington County, Mississippi, with an appraised value of $49,800, and the note receivable for approximately $184,000 from Southern Outdoors, Inc. Again, this statement mentioned neither the conditional sales con-

tract on the Covington County property, nor the note and deed of trust to the Bank of Simpson County.

The third financial statement showed Dr. Byrd as having a net worth of approximately $820,000. Again, it listed as assets the 60 acres in Smith County, Mississippi, the residence in Covington County, Mississippi, and the note receivable from Southern Outdoors. It mentioned neither the conditional sales contract on the Covington County property, nor the note and deed of trust to the Bank of Simpson County.

The final financial statement showed Dr. Byrd as having a net worth of approximately $488,000. It failed to list the conditional sales contract on the Covington County property and the note and deed of trust to the Bank of Simpson County. It simply listed as assets both the Smith County property and the Covington County residence. The note receivable from Southern Outdoors was not listed, according to Dr. Byrd because his accountant advised him that it would be preferable to change the status from a note receivable from Southern Outdoors to an additional capital contribution to Southern Outdoors. The bank obtained another credit report, and this time the report reflected Dr. Byrd's debt to the Bank of Simpson County.

The bankruptcy court found that each of the financial statements provided to the bank were in writing and concerned the debtor's financial condition. While Dr. Byrd admitted that the financial statements did not accurately reflect his financial condition, he denied that they were materially false. He also contended that the bank did not reasonably rely on them, and that they were not made with the intent to deceive the bank. The bankruptcy court found against the debtor on each issue.

*Materially False Financial Statements*

■ The debtor attempts to use a mathematical analysis to show that the financial statements were not materially false. He argues that even if the inaccuracies in his financial statements were corrected, he still would have come within the bank's net worth

and income parameters, and therefore would have been granted the loan.

■ The Fifth Circuit Court of Appeals has stated that a materially false statement is one that " 'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.' " *Jordan v. Southeast National Bank (Matter of Jordan)*, 927 F.2d 221, 224 (5th Cir.1991) *(overruled in part by Coston v. Bank of Malvern (Matter of Coston)*, 991 F.2d 257 (5th Cir.1993))[3], *quoting In re Nance*, 70 B.R. 318, 321 (Bankr.N.D.Tex.1987) *(citing In re Denenberg*, 37 B.R. 267 (Bankr.D.Mass. 1983)). In determining whether a false statement is material, "a relevant although not dispositive inquiry is 'whether the lender would have made the loan had he known the debtor's true situation.' " *Id., quoting In re Bogstad*, 779 F.2d 370, 375 (7th Cir.1985). "Writings with pertinent omissions may qualify as 'materially false' for purposes of § 523(a)(2)(B)." *Id., citing In re Biedenharn*, 30 B.R. 342 (Bankr.W.D.La.1983).

The bankruptcy court found that Dr. Byrd did not prove that the bank would have made the initial loan even if it had known his true financial situation. However, the court noted, even if he had proved that the bank would have loaned him the money regardless of the errors in his financial statement, that fact, while relevant, would not necessarily be dispositive of the "materially false" issue. The court concluded that the inclusion as an asset on the debtor's financial statement of 60 acres of real property valued at $30,000, which he has never owned, was a material misstatement; and that the representation that he owned a $49,000 residence free and clear, while it was subject to a deed of trust securing a debt of $39,000 and a conditional sales contract for $39,000, was a material omission. This Court finds adequate support in the record for the bankruptcy court's findings of fact, and further finds that the court applied the law correctly.

**3.** In *Coston v. Bank of Malvern (Matter of Coston)*, 991 F.2d 257 (5th Cir.1993), the Fifth Circuit overruled its opinion in *Matter of Jordan*

### Reasonable Reliance

■ Four financial statements were provided to the bank, one for the original loan and one for each of the three renewals. The debtor argued that the bankruptcy court should only consider whether the bank reasonably relied on the last financial statement provided. According to the debtor, by the time of the final renewal in July of 1991, the bank was aware of certain "red flags," i.e., the appearance on the July 1991 credit report of the note to the Bank of Simpson County, and the removal of the $184,000 note receivable from Southern Outdoors from the last financial statement; therefore, the bank's reliance on the last financial statement was not reasonable.

The bankruptcy court assumed, for the sake of argument, that the final financial statement did contain "red flags" that should have alerted the lender to possible inaccuracies in the financial statement. Nevertheless, the court concluded that where no additional money was obtained with each of the three renewals, it was the first and not the last financial statement provided to the bank that is relevant in determining the reasonableness of the bank's reliance.

The issue of "whether a bank waives its fraud claim when it renews notes after it becomes aware of inaccuracies on previous financial statements" is unresolved in the Fifth Circuit. *First National Bank LaGrange v. Martin (Matter of Martin)*, 963 F.2d 809, 815 (5th Cir.1992). The Fifth Circuit did not reach the issue in *Matter of Martin* because it affirmed the district court's finding that the debtor did not obtain the loans by fraud through intentional misrepresentation, but the court noted that "[t]he other circuits that have addressed the issue are split." *Id. See In re Liming*, 797 F.2d 895 (10th Cir.1986) (holding that lenders "should not be penalized for accepting part payment and extending the date by which the loan must be repaid in an apparent effort to keep the [debtor] afloat"); *In re Allen*, 65 B.R. 752 (Bankr.E.D.Va.1986) (distinguishing cases in which new, or "fresh," cash is ex-

"to the extent it held that reasonableness of reliance is a conclusion of law." *Id.* at 259.

tended and cases in which a pre-existing loan is merely renewed); *but see In re Archangeli,* 6 B.R. 50 (Bankr.D.Me.1980) (holding that a creditor waives his claim of fraud when he knows of misrepresentations at the time of renewal because he cannot rely upon those misrepresentations).

In *In re Liming,* the Tenth Circuit held that renewal of a note after the bank becomes aware of the falsity of a previous financial statement does not waive the bank's nondischargeability rights, if the renewal does not represent new debt incurred. In such circumstances, the renewal does not "represent a new debt incurred without regard to the initial false statement." 797 F.2d at 898. It does not mean that the bank should be estopped from asserting or should be regarded as having waived its nondischargeability rights in the event of bankruptcy. "If anything, the issuance of the renewal note [would show the bank's] great concern over [the debtor's] false financial statement," and its effort "to make the best of a bad situation." *Id.*

The bankruptcy court below, in view of *In re Liming,* and other authority, held that since the note renewal did not represent a new debt incurred, it need consider only whether the Bank of Mississippi reasonably relied on the financial statement provided by Dr. Byrd in connection with the original note executed in January of 1990. *See also Northern Trust Co. v. Garman (Matter of Garman),* 643 F.2d 1252 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981); *Merrill Lynch Business Financial Services, Inc. v. Kim (In re Kim),* 125 B.R. 594 (Bankr.C.D.Cal.1991); *Sovran Bank N.A. v. Allen (In re Allen),* 65 B.R. 752 (E.D.Va.1986).

The Fifth Circuit has stated that reasonableness of reliance under § 523(a)(2)(B) is to be a factual determination in light of the totality of the circumstances. *Coston v. Bank of Malvern (Matter of Coston),* 991 F.2d 257, 261 (5th Cir.1993).

The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Id.* (citations omitted); *see also Young v. National Union Fire Ins. Co. of Pittsburgh, Pa. (Matter of Young),* 995 F.2d 547 (5th Cir.1993); *Jordan v. Southeast National Bank (Matter of Jordan),* 927 F.2d 221 (5th Cir.1991).

The bankruptcy court found that when Dr. Byrd originally approached the bank, he had no individual past loan or deposit relationship with the bank. In addition to the financial statement, Dr. Byrd provided the bank with his income tax return. The bank also obtained a credit report on Dr. Byrd prior to making the loan. The loan officer for the bank testified that neither the income tax return nor the credit report contained information that would appear to contradict Dr. Byrd's testimony.

Dr. Byrd argued that a title report on his real property would have revealed that he did not own the 60 acres in Smith County and that the Covington County residence was encumbered with a deed of trust. However, the loan officer testified that the bank does not obtain title reports when considering an unsecured loan. Dr. Byrd also argued that the existence of the $103,000 note receivable from a corporation in which he owned 92% of the stock was inherently suspicious and should have been considered a "red flag."

The bankruptcy court found that it was reasonable for the bank not to require a title search on property listed on a financial statement in connection with an unsecured loan. Further, the court found that the bank was not unreasonable in relying on Dr. Byrd's professionally prepared financial statement as to the amount due him from the corporation. The bankruptcy court's finding of reasonable reliance is amply supported by the record.

*Intent to Deceive*

At trial, Dr. Byrd denied that he intended to deceive the bank, explaining that

he listed the 60 acres in Smith County as an asset because he thought he owned the property as a result of a conversation with his brother-in-law shortly after the death of his father-in-law. However, Dr. Byrd admitted being aware that he has never paid any taxes or received a tax bill on the property. Dr. Byrd's explanation for omitting the conditional sales contract and the deed of trust on the Covington County property was that these items were somehow mistakenly omitted from the first financial statement, and that the subsequent financial statements were simply prepared by reference to the first.

In *Highland Village Bank v. Bardwell (Matter of Bardwell)*, 610 F.2d 228, 229 (5th Cir.1980), the Fifth Circuit Court of Appeals held that "[o]btaining credit by a materially false financial statement will prevent bankruptcy discharge if the bankrupt either had knowledge of the falsity of the statement or demonstrated reckless indifference to the accuracy of the facts stated therein." (citations omitted). Intent to deceive may be inferred from the totality of the circumstances. *Jordan v. Southeast National Bank (Matter of Jordan)*, 927 F.2d 221 (5th Cir.1991); *FDIC v. Lefeve (In re Lefeve)*, 131 B.R. 588 (Bankr. S.D.Miss.1991); *see also Matter of Young, supra* at 549 (intent to deceive may be inferred from use of a false financial statement to obtain credit). "[D]ebtors with business acumen . . . are to be held to a higher standard." *Matter of Jordan, supra* at 226.

The bankruptcy court found that Dr. Byrd was a highly educated man with an extensive background in business matters. Since graduation from dental school, he had been involved in several business ventures, including a roofing business and a fishing tackle store, and was a major stockholder in a corporation named Mississippi Marine Specialties. He also owned a city block in Mount Olive, Mississippi, which he used as rental property, and owned half of the office building in which his dental practice was located. The court found that he possessed an understanding of both the incidents of real property ownership and the significance of encumbrances on real property, and thus should be held to a higher standard. (Memorandum Opinion, p. 17).

The court also found that Dr. Byrd exhibited a reckless indifference to the accuracy of his June 30, 1989 financial statement which he provided to the bank to obtain the original $20,000 unsecured loan. Therefore, the court found, Dr. Byrd had the requisite intent to deceive at the time he furnished the statement. This finding is also well supported by the record.

In conclusion, this Court finds that the financial statements of the debtor contained materially false statements; that the debtor acted with reckless indifference to, if not actual knowledge of, the materially false statements; and that the Bank of Mississippi reasonably relied on these misstatements in making the loan; therefore, a judgment of nondischargeability pursuant to § 523(a)(2)(B) was warranted.

AFFIRMED.

A separate order dismissing this appeal shall follow.